# IN THE SUPREME COURT OF IOWA

No. 10–0843

Filed June 29, 2012

**MISTY M. WHITLEY,**

Appellant,

vs.

**C.R. PHARMACY SERVICE, INC.** d/b/a FIFTH AVENUE PHARMACY, and **FIFTH AVENUE COMPOUNDING,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, L. Vern Robinson, Judge.

Plaintiff appeals from judgment for defendant on a jury verdict in a pharmacy malpractice lawsuit. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Robert E. Breckenridge of Breckenridge Law, P.C., Ottumwa, for appellant.

Christopher L. Bruns and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees.

**CADY, Chief Justice.**

In this case, we must decide whether the district court erred in admitting exhibits directed to the issue of fault in a pharmacy malpractice action that were not disclosed during the pretrial discovery. The court of appeals found the district court abused its discretion by not excluding the evidence as a sanction for violating both the pretrial order of the district court to disclose all exhibits prior to trial and the spirit and purpose of our discovery rules. On our review, we vacate the decision of the court of appeals and affirm the district court.

## I. Background Facts and Proceedings.

Like many people, Misty Whitley had nearsighted vision. She sought the services of Dr. Lee Birchansky, an ophthalmologist at the Fox Eye Clinic in Cedar Rapids, to correct her vision. After consulting with Dr. Birchansky, she decided to undergo Epithelial Laser Assisted In Situ Keratomileusis (Epi-LASIK) eye surgery, a procedure commonly used to correct nearsightedness, farsightedness, or to reduce astigmatism. The surgery requires the skin of the cornea to be removed to enable a laser to sculpt the underlying surface of the cornea. A thin contact lens is placed on the cornea while a new layer of skin grows over the cornea. The new corneal skin typically takes three to five days to regenerate.

On November 3, 2005, Whitley underwent Epi-LASIK surgery. Dr. Birchansky performed the procedure. Immediately following the surgery, Whitley's vision improved to 20/20. By March 2006, however, Whitley's vision had deteriorated. She returned to Fox Eye Clinic on March 7. Dr. Birchansky diagnosed her with postoperative corneal scarring in both eyes, a common risk associated with Epi-LASIK surgery. He recommended Whitley undergo a corneal scraping procedure followed by application of a drug known as mitomycin-C (MMC) to help treat her

blurry vision and prevent scarring. Whitley's surgery was scheduled for March 9. Dr. Birchansky notified staff to order MMC at 0.02% concentration from C.R. Pharmacy in Cedar Rapids to use for the surgery.

C.R. Pharmacy received and processed the prescription order on March 7. Pharmacist Jodie Smith entered the medication into the computer system at the pharmacy. She compounded the MMC at a separate facility across the street. Smith took the product label, containers, and the supplies necessary to complete the product to the facility. The pharmacy's records show the compounding was performed the morning of March 9, and the medication was placed in a bottle.

The surgery took place in Dr. Birchansky's office on March 9. The records from Dr. Birchansky's office indicated the surgery began around noon and was completed within an hour. Dr. Birchansky applied a substance from a bottle he believed to be MMC ordered from the pharmacy. Dr. Birchansky did not apply the entire amount of the substance in the bottle and placed the bottle containing the remaining amount in a refrigerator in his office.

On March 13, Whitley returned to the clinic because her eyesight had deteriorated and she had severe headaches. Dr. Birchansky found the skin over her cornea was not healing. Ultimately, Whitley's eyes began to show signs of cataracts and glaucoma. Dr. Birchansky referred Whitley to the University of Iowa Hospitals and Clinics for further testing and treatment. The physician who examined Whitley concluded her condition was likely caused by the application of MMC in excess of 0.02% concentration. Dr. Birchansky then sent what purportedly was the remainder of the substance in the bottle for testing. The results of the testing revealed no trace of MMC in the bottle.

Whitley subsequently underwent corneal transplant surgery on both eyes. Soon after, an accident caused Whitley to have her left eye surgically removed. She now wears a prosthetic eye.

On November 16, 2007, Whitley filed a lawsuit against Dr. Birchansky and Fox Eye Clinic alleging negligence and res ipsa loquitur. On February 14, 2008, the petition was amended to add a claim against C.R. Pharmacy alleging it supplied a defective product for her surgery.

Whitley dismissed Dr. Birchansky and his office from the lawsuit on January 12, 2009, and continued to pursue the claims against C.R. Pharmacy. A discovery deadline was set for July 10, 2009, and the trial date was later continued to March 1, 2010, to allow both parties additional time for investigation and discovery.

On September 17, 2009, Whitley filed a motion to amend her petition to assert an additional claim of negligence. She alleged the prescription delivered to Dr. Birchansky was not the MMC ordered, but was another substance that C.R. Pharmacy improperly represented as MMC. In particular, the amended petition alleged:

> That the Defendant C. R. Pharmacy Service, Inc. . . . was negligent in the compounding of the solution delivered to Dr. Birchansky . . . in one or more of the following ways:
>
> A. In failing to deliver mitomycin-C to Dr. Birchansky;
>
> B. In delivering a solution to Dr. Birchansky in a bottle with a label indicating the content was mitomycin-C when the bottle did not contain mitomycin-C;
>
> C. In delivering to Dr. Birchansky a solution of an unknown chemical and strength in a bottle labeled mitomycin-C;
>
> D. In failing to warn Dr. Birchansky that the prescription did not contain a solution of mitomycin-C;
>
> E. In failing to warn Dr. Birchansky that the prescription contained a solution other than the requested mitomycin-C;

F. In failing to properly compound the requested solution of mitomycin-C.

The amended pleadings were filed after the July deadline established in the pretrial order for amending pleadings and completing discovery. Consequently, C.R. Pharmacy claimed the pleadings were untimely. Before the district court ruled on Whitley's motion to amend, Whitley served nine supplemental interrogatories on C.R. Pharmacy. C.R. Pharmacy responded to the additional interrogatories in October 2009. Interrogatory Nos. 7 and 8 requested the pharmacy provide the name of individuals other than its employees or agents it alleged were responsible for Whitley's injuries. C.R. Pharmacy responded:

> Defendant objects to this Request as calling for attorney work product. Without waiving this objection Defendant states it contends Dr. Birchansky's office applied a substance other than the original MMC prescription to Plaintiff's eyes and later substituted another substance for the original prescription before sending the bottle for testing.

On November 16, 2009, the district court granted Whitley's motion to amend her petition to add the specific claims of negligence by C.R. Pharmacy. The court directed the defendant to file a motion for a continuance if it needed more time to prepare for trial in light of the amended petition. The discovery deadline from the court's initial scheduling order was not altered to extend discovery.[1]

On November 23, 2009, C.R. Pharmacy submitted a supplemental response to the interrogatories asserting an additional objection that the interrogatories were untimely because the discovery deadline of July 2009 had passed. Neither party requested a continuance of the trial,

---

[1]The district court order granting the plaintiff's motion to amend pleadings indicated it had previously directed court administration to change the pleading and discovery deadlines when it continued the trial in June 2009, but no change was entered.

and the objections were not submitted to the district court for a ruling or were not otherwise resolved by the parties.

A final pretrial conference was held on February 12, 2010. C.R. Pharmacy filed its notice of exhibits listing fifteen documents, including a handwritten note memorializing the order for MMC from Dr. Birchansky's office, a prescription delivery log, and a receipt from March 9, 2006.[2] Essentially, the pharmacy maintained it delivered the correct prescription and Dr. Birchansky mistakenly applied the wrong substance. Whitley asserted the pharmacy compounded and delivered the wrong prescription, which Dr. Birchansky applied to her eyes. The final pretrial order by the district court stated, "Any exhibit not identified will not be admitted at trial unless this order is modified by the court, for good cause shown, by any party wishing to offer such exhibit." The prior pretrial order that set the trial date and pretrial conference provided that "[t]he only exhibits exempted are those which will be used for impeachment purposes only or those exhibits which are too difficult to transport because of size or weight."

A few days following the February 12 pretrial conference, the pharmacy manager, Robert Keane, discovered new documents indicating the prescription in dispute was never delivered to Dr. Birchansky's office, but instead was picked up by Dr. Birchansky's office manager on March 9, 2006, at 1:39 p.m. The pharmacy manager discovered the documents when he was preparing for trial. The pick-up time recorded on these documents was after the time the records from Dr. Birchansky's office indicated Whitley's surgery was completed. The new documents

---

[2]The prescription delivery log (Exhibit D) showed a delivery to Fox Eye Clinic on March 9, but the signature of the person signing for the delivery was crossed out. The pharmacy manager testified at trial that this meant the delivery had not taken place.

consisted of a pick-up log from the pharmacy, which purportedly showed "J. Hazzard" picked up the MMC prescription from the pharmacy, and a cash register receipt from the pharmacy indicating an in-store pick up of an MMC prescription on March 9 at 1:39 p.m. The pharmacy manager who discovered these documents promptly reported his discovery to counsel for the pharmacy.

Counsel for the pharmacy did not notify counsel for Whitley of the discovery. They concluded they had no obligation to disclose the documents under the pretrial order or the rules of discovery.

Trial commenced on March 1. In its opening statement, C.R. Pharmacy stated that it could not be at fault because it did not deliver the prescription to Fox Eye Clinic before Whitley's surgery took place. As the pharmacy's counsel elaborated:

> If, as the pharmacy now believes, an employee from Dr. Birchansky's office signed for the prescription, we know when they signed because when you go to the pharmacy, like most of us, and you go and sign, they run you through the cash register and the cash register receipt has a date and time stamp on it. The time stamp for that signature is 1339 hours, or 1:39 p.m., well after Dr. Birchansky's procedure is over.

On March 2, the second day of trial, C.R. Pharmacy disclosed both of the newly discovered documents during the cross-examination of Dr. Birchansky. It presented him with Exhibit NN, the pick-up log from the pharmacy purportedly showing "J. Hazzard," Dr. Birchansky's office manager, had picked up the MMC prescription from the pharmacy and Exhibit OO, the cash register receipt showing that the prescription was paid for at the pharmacy on March 9, 2006, at 1:39 p.m. Neither document was admitted into evidence at that point. The district court sustained, based on the lack of foundation, Whitley's objection to Exhibit NN. Exhibit OO was not offered at that time.

At the end of the day on March 3, as Whitley was nearing the end of her case in chief, she raised an objection to Exhibit NN on the ground that she had not received notice of the document before trial. She asked that the document be excluded and for permission to take a discovery deposition of Keane and anyone else the pharmacy intended to present testimony about the document. The pharmacy resisted the request for exclusion, explaining that the documents had been discovered after the pretrial order and denying that Whitley had served a discovery request that required it to disclose the documents. The district court said it would review the matter overnight. It did order that Whitley could take Keane's deposition.[3]

The next morning, March 4, Whitley expanded her objection to include Exhibit OO. Whitley urged both exhibits should have been disclosed in response to her Interrogatories 7 and 8. C.R. Pharmacy argued that the documents were not discovered until after the pretrial order and that they were only being used for impeachment. It also asserted that objections had been raised to Interrogatories 7 and 8. The district court commented, "I don't like it either way," but decided not to exclude Exhibits NN and OO. Whitley then reiterated her request for a discovery deposition of Keane before his testimony, and the district court granted Whitley's request.

At mid-morning, the jury was excused. During a recess, Whitley deposed Keane and two other pharmacy personnel. Before trial resumed in the afternoon, the parties had a conference with the court. Based on

---

[3]Whitley's counsel also mentioned he had left several messages with Judy Hazzard, Dr. Birchansky's former office manager and the person who had allegedly signed the pick-up log on March 9. He indicated at that time that he had been unable to reach her. Another potential witness would have been the pharmacy's delivery person, but he suffered from Parkinson's disease and was not available to testify.

the depositions, Whitley raised an objection that Keane's testimony regarding the significance of the cross-out on Exhibit D (the prescription delivery log) would be speculative. The objection was overruled, and Keane took the stand. Through Keane, the pharmacy offered Exhibits NN and OO, the March 9 pick-up record signed by J. Hazzard and the March 9 cash register receipt for an in-store pick up of the MMC prescription dated March 9 at 1:39 p.m. Whitley renewed her previously stated objections to the exhibits, but they were overruled, and the exhibits were admitted.

Whitley sought no further relief, such as a continuance to attempt to locate Judy Hazzard. On March 5, the case went to the jury, which returned a verdict for the pharmacy.

Whitley moved for a new trial on the grounds that C.R. Pharmacy had failed to comply with Iowa Rule of Civil Procedure 1.503(4)(*a*)(3) by not supplementing its interrogatory answer prior to trial with its newly acquired information. Whitley requested the district court sanction C.R. Pharmacy by setting aside the jury verdict and substituting a new trial or by reinstituting the offer to confess judgment. The district court denied the motion, stating it believed the documents had been discovered in good faith immediately before trial and they provided important information for "the process of finding the truth."

Whitley appealed. She claimed the district court erred at trial by admitting into evidence the cash register receipt and the pharmacy log that purported to show the medication provided to Dr. Birchansky by the pharmacy was obtained by Dr. Birchansky's office employee after the doctor performed the surgery. She argued the district court erred by failing to exclude the exhibits as a sanction against the pharmacy for failing to disclose the exhibits in advance of trial in violation of the rules

of discovery and the pretrial order. She also argued the district court erred in failing to exclude testimony from witnesses about the meaning of the exhibits as too speculative.

We transferred the case to the court of appeals. It held the district court abused its discretion by failing to exclude the exhibits from trial as a sanction against the pharmacy for failing to disclose the exhibits to Whitley in advance of trial. It found the surprise Whitley encountered in the middle of trial was too prejudicial for the trial court to refuse to exclude the evidence. As a result, the court of appeals reversed the judgment and granted a new trial. We granted further review.

## II. Standard of Review.

We normally review decisions on sanctions for violation of discovery for an abuse of discretion. *Lawson v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010). To the extent we review the basis of the decision of the court for an erroneous interpretation of the law, however, our review is for legal error. *State v. Kjos*, 524 N.W.2d 195, 196 (Iowa 1994). Under either standard, we will not reverse the court's decision to admit evidence unless the record shows prejudice to the complaining party. *Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 636–37 (Iowa 1997).

## III. Analysis of Claims.

**A. Overview.** At the outset, it is important to frame the issues presented in this appeal. While Whitley sought a new trial before the district court based on the surprise she was dealt at trial, the claim she raised on appeal is the district court erred in failing to exclude the evidence as a sanction for failing to supplement discovery and comply with the pretrial order. She does not separately raise, as a claim in this appeal, the failure of the district court to grant a new trial on account of

the surprise she faced when confronted with the undisclosed evidence. *See* Iowa R. Civ. P. 1.1004(3) (authorizing new trial after an adverse verdict if "[a]ccident or surprise which ordinary prudence could not have guarded against" materially affects a party's substantial rights). Thus, we are only reviewing a claim of error by the district court for failing to exclude evidence in response to a timely objection, and a new trial is only sought as a remedy on appeal for the claim of trial error.

**B. Violation of Discovery Rules.** Whitley claims C.R. Pharmacy committed a sanctionable discovery violation by failing to update its answers to Interrogatories 7 and 8 after it became aware of the pick-up log and the receipt showing a 1:39 p.m. pick up. C.R. Pharmacy responds that Whitley is to blame for not having served a specific, timely discovery request that required disclosure of the documents at issue. Thus, we first consider the legal responsibility of the pharmacy to disclose the disputed information.

Our rules of discovery exist to avoid the type of surprise that occurred in this case. *See White v. Citizens Nat'l Bank of Boone*, 262 N.W.2d 812, 816 (Iowa 1978). A trial should be a search for the truth, and our rules of discovery are an avenue to achieving that goal. The discovery process seeks to make a trial into " 'a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' " *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 311 (Iowa 2009) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83, 78 S. Ct. 983, 986–87, 2 L. Ed. 2d 1077, 1082 (1958)).

Generally, discovery following the filing of a lawsuit involves any information that is "relevant" and "not privileged." Iowa R. Civ. P. 1.503(1). A variety of discovery methods exist under our rules for a party to gather such information from another party, including the use of

written interrogatories. *See id.* r. 1.509(1) (permitting a party to serve written interrogatories to be answered by the other party). The rules governing interrogatories require a party who has been served with interrogatories to answer each written question unless an objection to the interrogatory is lodged. *Id.* An objection suspends the obligation to answer until the objection is resolved. *See id.* (requiring either an answer or objection in response to an interrogatory); *see also Schaap v. Chicago & Nw. Ry.*, 261 Iowa 646, 649, 155 N.W.2d 531, 533 (1968) (holding a party who withholds an objection to interrogatories waives the objection and is required to make a full answer). Additionally, the rules require a party who has responded to an interrogatory to later supplement or amend the response to include information acquired after the initial response was made when, among other circumstances, the question addressed a matter that bore "materially upon a claim or defense asserted by any party to the action." *Id.* r. 1.503(4). Consistent with the discovery rules in general, the duty to supplement seeks to clarify issues prior to trial, avoid surprise to parties, and allow a complete opportunity to prepare for trial. *White*, 262 N.W.2d at 816. Thus, a party has a clear duty to supplement answers to interrogatories.

Rule 1.509 provides that "[e]ach interrogatory shall be answered separately and fully in writing under oath, *unless it is objected to*, in which event the reasons for the objection shall be stated *in lieu of an answer.*" Iowa R. Civ. P. 1.509(1) (emphasis added). Thus, the rule provides that a party should either answer or object to an interrogatory but does not specify what happens if a party does both.

The comparable Federal Rule of Civil Procedure is Rule 33. *See* Fed. R. Civ. P. 33. This rule was amended in 1993 to specifically provide that a party may object to a question but provide a partial answer.

*Advisory Committee Notes on Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 673 (1993) (adding language to Rule 33(b)(1) to read that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable"). The pre-1993 version of Federal Rule 33, however, contains similar language as our rule 1.509. According to some authority, under the pre-1993 version of the Federal Rule, an objection accompanied by an answer was treated as a waiver of the objection. *See Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55, 58 (N.D. Ga. 1984) ("Defendant not only objected to this interrogatory but also answered the interrogatory in the same response. This procedure is improper."); *see also Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 166 (N.D. Ohio 1964) ("Whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands.").

We need not decide whether the same result follows under rule 1.509. A party that provides an answer to an interrogatory should be required to supplement whatever answer it has provided. Even a partial answer is not exempt from the obligation to supplement discovery under rule 1.503(4). A contrary approach would be inconsistent with the goal of discovery to disclose the facts to the " 'fullest practicable extent.' " *Comes*, 775 N.W.2d at 311 (citation omitted).

Accordingly, the attorney-work-product objection lodged in this case accompanied by an answer was an answer subject to the duty to supplement like any other answer.[4] Similarly, the subsequent objection

---

[4]We observe that the documents disputed in this case that became Exhibits NN and OO were not " 'prepared or obtained because of the prospect of litigation.' " *Wells*

lodged by the pharmacy that the interrogatories were untimely under the terms of the pretrial order simply stood alongside the previous answer and, as with the work-product objection, did not alter the duty to supplement the answer given.

Notwithstanding, the pharmacy argues Whitley was foreclosed from any relief in the form of sanctions because she failed to make a good-faith effort to compel more complete discovery in response to its original objection and answer. The pharmacy points out that the original answer it provided was incomplete and merely reiterated its general assertion that Dr. Birchansky must have applied a substance to Whitley's eyes other than the MMC prescription it filled and then substituted another substance for the prescription filled by the pharmacy before submitting it for testing.

Interrogatory No. 8 did ask for detailed information from the pharmacy. It requested information including the identity of persons with knowledge about the allegations and the identity of documents to support the allegations. The pharmacy did not respond to the specific detailed request, but simply answered the interrogatory with its general claim that Dr. Birchansky was responsible for the injury. Nevertheless, Whitley is not precluded from asserting a claim for sanctions based on

_____

*Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 48 (Iowa 2008) (quoting 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2024, at 198–99 (2d ed. 1994)). Further, Interrogatory No. 8 was a classic contention interrogatory that did not call for work product. *See* Iowa R. Civ. P. 1.509(2) ("An interrogatory otherwise proper is not necessarily objectionable merely because the answer to the interrogatory involves an opinion or contention that relates to facts or the application of the law to facts . . . ."). Equally important, when a party withholds a document in discovery, asserting the document is privileged, "the parties shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Iowa R. Civ. P. 1.503(5)(*a*). The pharmacy did not do so here.

the failure to supplement discovery by failing to move to compel more detailed discovery.

Under our rules of civil procedure, parties seeking discovery should normally be justified in believing they have received substantially all the information requested. Our rules specifically require answers to interrogatories must be "fully" answered. *Id.* r. 1.509(1). Overall, our rules strive "to effectuate the disclosure of information relevant to the parties." *Farnum v. G.D. Searle & Co.*, 339 N.W.2d 384, 389 (Iowa 1983). Moreover, a party may not unilaterally determine the scope of the duty to respond to interrogatories. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1083–84 (Wash. 1993). If the pharmacy wanted to protect itself from a duty to supplement discovery, it should have moved for a protective order. *Id.*

Interrogatories 7 and 8 focused directly on the pharmacy's defense that the injury to Whitley was caused by Dr. Birchansky or his office. The pharmacy had a continuing duty to supplement its answer. Once the pharmacy acquired documentation supporting its claim that Dr. Birchansky's office caused the injury, it had a duty to supplement its response under rule 1.503(4)(*a*)(3). The pharmacy violated its duty to supplement its answer.[5]

---

[5]Because we conclude the pharmacy had a duty to disclose the newly discovered evidence prior to trial by supplementing its answers to interrogatories, it is unnecessary for us to consider whether Exhibits NN and OO were also required to be disclosed under the pretrial order that directed the parties to exchange all exhibits intended to be used at trial. Although the pretrial order did not require documents used only for impeachment to be exchanged prior to trial, the pharmacy's attorney referred to the exhibits in the opening statement, which substantially undermined the pharmacy's claim that these exhibits were intended only for impeachment. It is generally recognized that a party cannot utilize impeachment as a subterfuge for the introduction of evidence that is otherwise inadmissible. *See State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995).

### IV. Failure to Exclude Evidence.

Whitley asserted on appeal that the disputed evidence was inadmissible as a sanction because of the failure to supplement discovery and because it was too speculative. We will address each claim separately.

**A. Sanction.** We first consider the decision by the district court to deny Whitley's request to exclude the evidence as a sanction for the failure to supplement discovery. Generally, noncompliance with discovery is not tolerated. *Lawson*, 792 N.W.2d at 258. Nevertheless, the sanction to result from noncompliance rests with the sound discretion of the trial court. *Id.* While the sanction for the failure to supplement discovery can include exclusion of the evidence at trial, the trial court can also deny a request to exclude evidence. *Id.* at 258–59. The factors used to consider sanctions include:

1. the parties' reasons for not providing the challenged evidence during discovery;

2. the importance of the evidence;

3. the time needed for the other side to prepare to meet the evidence; and

4. the propriety of granting a continuance.

*Id.* at 259. Thus, in considering sanctions, a continuance can be used as a tool to minimize or eliminate prejudice that can be visited on a party when discovery is withheld. A continuance can give the complaining party an opportunity to overcome the surprise and prepare an effective response to the new evidence. Generally, a continuance is considered to be the "traditionally appropriate remedy" for a claim of surprise at trial. *State v. Maghee*, 573 N.W.2d 1, 6 (Iowa 1997).

When the pharmacy disclosed the newly discovered documents at trial and its new defense theory became apparent, Whitley requested the evidence be excluded as a sanction for the failure to timely disclose it prior to trial. She also requested a continuance of the trial in the event the court did not exclude the documents from evidence. She indicated the continuance would be necessary to take depositions of the witnesses the pharmacy intended to call at trial to testify about the documents. The court granted the request for a continuance and then later denied the request to exclude the newly discovered evidence. Thus, we must consider if the trial court abused its discretion in making this decision.[6]

A trial court abuses its discretion when it acts " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008) (quoting *Maghee*, 573 N.W.2d at 5). We cannot conclude the decision by the trial court to deny the request to exclude the evidence after a continuance had been granted constituted an abuse of discretion. The continuance offered Whitley the opportunity to overcome the surprise she confronted at trial. It was a traditional remedy used by courts when evidence is not disclosed until trial. *See Lawson*, 792 N.W.2d at 258–59 (recognizing the propriety of

---

[6]Whitley agrees our standard of review is for an abuse of discretion. We observe the trial court made its ruling to deny exclusion of the documents without indicating whether or not the pharmacy violated the rules of discovery or the pretrial order in failing to produce the documents prior to trial. Yet, we also observe the trial court mentioned in its subsequent ruling on the motion for a new trial that its ruling at trial denying sanctions was based on its conclusion that the pharmacy had not "technical[ly] breached the rules," but prompt disclosure "would have been professionally preferable." Thus, the trial court's decision to admit the new evidence at trial could be viewed as an error at law. When a discretionary decision by a trial court involves an erroneous interpretation of law, our review is for legal error. *Kjos*, 524 N.W.2d at 196. Under this standard, the error requires reversal and a new trial if it was prejudicial. *Thompson v. Rozeboom*, 272 N.W.2d 444, 447–48 (Iowa 1978). Nevertheless, because the trial court granted a continuance to abate the prejudice, the analysis applicable to an abuse of discretion review would be comparable to a review for errors at law.

granting a continuance and determining the appropriate sanction for failing to supplement discovery). Whitley used the opportunity to take three depositions. Moreover, she did not object prior to the resumption of trial that the continuance granted by the trial court had been insufficient for her to adequately confront the new evidence once the trial was to resume. Instead, Whitley switched gears just prior to the resumption of trial and argued that the pharmacy's new claim was too speculative. Whitley then waited until filing a motion for new trial following the jury verdict to finally inform the court that the continuance did not provide her adequate time to investigate the new evidence and rebut the allegations.

The district court did not abuse its discretion when it made its decision to grant a continuance and deny the request to exclude the evidence. Based on the circumstances existing at the time the decision was made, the trial court pursued a reasonable course of action. Importantly, Whitley did not subsequently request any further relief from the trial court based on a claim that the continuance was inadequate.[7] Had Whitley made such a claim, the trial court could have considered further relief or sanctions. Consequently, Whitley waived any further claim of error by failing to make a further objection. *See State v. Wesson*, 260 Iowa 331, 340, 149 N.W.2d 190, 196 (1967). A litigant cannot sit on a claim of error until the trial is over and make the claim once the result of the trial is unsatisfactory. *See DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002) (" '[I]t is unfair to allow a party to choose to remain silent in

---

[7]In considering the possible prejudice that Whitley suffered from the belated disclosure of the documents, we note her claim that she was unable to locate Judy Hazzard, the retired employee of Fox Eye Clinic who supposedly picked up the prescription from the pharmacy at 1:39 p.m. on the day of the surgery. However, Whitley never asked the court for additional time to locate Hazzard.

the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.' " (quoting 5 Am. Jur. 2d *Appellate Review* § 690, at 360–61 (1995))).

**B. Speculation.** Whitley also claims the court abused its discretion by allowing the pharmacy manager, Robert Keane, to testify to his conclusion about the meaning of the line through the name of Dr. Birchansky's receptionist that was written on the delivery log. Prior to Keane's testimony, counsel for Whitley objected to any interpretation of the mark on the delivery log as too speculative because the individual who would have personal knowledge of it was not testifying. The pharmacy asserted Keane would limit his testimony about the exhibits to his conclusion that the prescription was likely picked up, not delivered, based on his knowledge of what a mark on delivery logs typically meant in his experience with the pharmacy's delivery system. The pharmacy also pointed out that Keane was available for cross-examination by opposing counsel to explore the likelihood this case conformed to his experiences in the past. The district court overruled Whitley's objection and found the proposed testimony was fair circumstantial evidence.

The rules of evidence do not specifically recognize an objection that a question calls for speculation. Nevertheless, rule 5.611(*a*) authorizes the district court to exercise reasonable control over the evidence, which would authorize trial judges to address objections based on speculation and conjecture. 7 Laurie Kratke Dorè, *Iowa Practice: Evidence* § 5.611:1, at 576 (2011 ed.) [hereinafter Dorè]. Additionally, such an objection can relate to testimony about the meaning of facts and the opinions expressed by witnesses.

Essentially, Whitley's argument is that the court allowed a lay witness to improperly opine about an ultimate issue at trial. Lay witnesses may testify to their opinions or inferences if the testimony is rationally based on the witness's perceptions and it is helpful to giving the jury a clear understanding of either the witness's testimony or a determination of a fact at issue in the case. 7 Dorè § 5.701:1, at 628–31. To properly admit a lay witness's testimony, a sufficient factual foundation must be established showing the witness's opinion is based on firsthand knowledge and "personal knowledge of facts to which the observed facts are being compared." *Id.* In this case, the pharmacy established Keane had personal knowledge of the pharmacy's delivery log procedures and that he conducted an investigation into the logs and receipts in Whitley's case before reaching his conclusion. The district court concluded the testimony was circumstantial evidence of the proposition claimed. It had discretion to make such a decision. *See State v. McCarty*, 179 N.W.2d 548, 551 (Iowa 1970) (holding the district court has discretion to allow a lay witness to express an opinion on a matter for which there is proper factual foundation). We cannot conclude the decision made by the district court was an abuse of discretion.

**V. Conclusion.**

We have considered all issues raised on appeal. We reverse the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**