**IN THE COURT OF APPEALS OF IOWA**

No. 13-1923
Filed April 22, 2015

**ROBERT REED and PATRICIA
REED,**
      Plaintiffs-Appellants,

**vs.**

**MICHELLE LYNN SCHAEFFER
and RICHARD SCHAEFFER,**
      Defendants-Appellees.
_____

      Appeal from the Iowa District Court for Scott County, Mark D. Cleve,

Judge.


      Personal-injury plaintiffs appeal the district court's denial of their motion for

new trial.  **AFFIRMED.**


      Ted E. Breckenfelder of Breckenfelder Law Firm, Davenport, for

appellants.

      Martha L. Shaff and Amanda M. Richards of Betty, Neuman & McMahon,

P.L.C., Davenport, for appellees.


      Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Robert and Patricia Reed were hospitalized after Michelle Schaeffer, who was operating while intoxicated, collided with their car. After a trial in which Schaeffer stipulated fault and the Reeds did not present any expert medical testimony, the jury awarded the Reeds compensatory damages and nominal punitive damages. On appeal, the Reeds raise numerous issues based on the district court's denial of their post-trial motions.

We decline to grant relief on any of their issues. First, because the Reeds did not present evidence from a toxicologist on the effect of Schaeffer taking a prescription drug the night before the collision, the district court did not abuse its discretion in excluding this speculative evidence. Similarly, the court did not abuse its discretion in excluding a police car video as a discovery sanction. We also uphold the district court's ruling denying the Reeds' motion for a new trial based on allegedly inadequate damages. Defense counsel's statements during closing argument were not false, nor did they misstate the record. Assuming error was preserved on the issue of future damages, we uphold the district court's determination expert testimony was required before future damages could be submitted to the jury.

Finally, two of the Reeds' claims cannot be considered on appeal. The Reeds' counsel acknowledges his failure to object to the PowerPoint presentation during closing argument; therefore, he did not preserve this issue for our review. Also, because the Reeds first requested the court appoint a

special master on jury-related issues in their post-trial motions, they waived any claim of error by waiting until after trial to raise this issue.

## I. Background Facts and Proceedings

While her blood-alcohol concentration was .09, Michelle Schaeffer ran a stop sign at a Bettendorf intersection and collided with a car driven by Patricia Reed in which her husband Robert was a passenger. The Reeds, who were in their 70s at the time of the incident in April 2010, required treatment at a local hospital: Patricia for one day and Robert for three days. Both Robert and Patricia testified to experiencing considerable pain as a result of their injuries sustained in the collision. In April 2012 the Reeds filed a negligence action seeking compensatory and punitive damages.[1]

Schaeffer answered. Also in April 2012, she propounded interrogatories and a request for production of documents. When discovery did not proceed smoothly, Schaeffer filed a motion to compel in October 2012. On October 23, 2012, the court granted the motion and ordered the Reeds to "fully respond to all outstanding discovery requests on or before November 9, 2012." The court also stated the Reeds' failure to comply "shall" result in sanctions, "which can include . . . prohibiting them from [presenting] any evidence at trial." Thereafter, despite the court's order, the Reeds failed to fully respond to Schaeffer's discovery requests. The court set trial for September 2013.

In August 2013 Schaeffer filed motions in limine. On September 5, 2013, Schaeffer filed a stipulation acknowledging fault and admitting as a result of the

---

[1] The Reeds' petition was filed against driver Michelle Schaeffer and vehicle-owner Richard Schaeffer. For convenience, we will refer only to Michelle Schaeffer.

collision she was convicted of operating while intoxicated (OWI), first offense. On September 6, 2013, the court ruled on Schaeffer's motions in limine. Noting the Reeds had been ordered to provide answers to outstanding discovery by November 9, 2012, the court prohibited the Reeds from "introducing into evidence any testimony, information, or other evidence that was sought by" Schaeffer but not disclosed. Regarding unanswered discovery requests concerning the Reeds' medical records, the court prohibited the Reeds "from admitting into evidence any medical records or expert testimony with the exception of reference to records that were turned over to" Schaeffer or "information supplied" to Schaeffer. "This does not preclude [the Reeds] from talking about their own injuries that they have suffered."[2] As to medical records after the Reeds' initial hospital visits, the court prohibited the Reeds from introducing any testimony, information, or other evidence that was sought by [Schaeffer's] interrogatories or requests for production of documents but not produced." The court did not exclude discovery the Reeds had, in fact, "provided after November 9, 2012, but prior to the filing of the motion in limine."

A jury trial commenced on September 9, 2013. The parties jointly stipulated to medical expenses: (1) from April 15 to April 18, 2010, Robert Reed incurred paid medical expenses of $22,569.60; and (2) from April 15 to April 16,

---

[2] The court also prohibited the Reeds "from offering any testimony concerning the nature and extent of permanency of their own conditions, as they do not have the medical expertise required to render said opinions." Regarding expert opinions that the Reeds failed to disclose thirty days before trial, the Reeds told the court, "No expert opinions are presently expected." The court then ruled the issue was moot, but if the Reeds reversed course and elected to call an expert, then the issue would be resolved by the trial court.

2010, Patricia Reed incurred paid medical expenses of $17,489.41. The Reeds and their two sons testified at trial. The Reeds also presented the testimony of police officers Richard Streepy and Jeremy Salsberry. The jury returned a verdict awarding Robert Reed $30,069.60 in compensatory damages[3] and $1.00 in punitive damages and awarding Patricia Reed $19,989.41 in compensatory damages[4] and $1.00 in punitive damages. The Reeds filed two post-trial motions: the first seeking adequate judgment (notwithstanding verdict) and a new trial, and the second asking for appointment and reference to a master. The court denied the motions, and this appeal followed.[5]

## II. Standards of Review

"We review a district court's evidentiary rulings for an abuse of discretion." *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014). Our review of the district court's denial of the Reeds' motion for new trial depends upon the grounds asserted in the motion. *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). If the motion and ruling are based on a discretionary ground, review is for an abuse of discretion. *Id.* On the other hand, if the motion's grounds for new trial are based on a claim the district court erred on an issue of law, review is for legal error. *Id.*

---

[3] The verdict form lists $22,569.60 in past medical expenses, $6500 in past pain and suffering, and $1000 in past loss of function of body.
[4] The verdict form lists $17,489.41 in past medical expenses, $1500 in past pain and suffering, and $1000 in past loss of function of body.
[5] In her brief, Schaefer asks us to dismiss this appeal based on the Reeds' failure to meet appellate deadlines. Because our supreme court denied Schaefer's motion to dismiss, we need not address the issue.

### III.  Exclusion of Evidence of Schaeffer's Prescription Medications

The Reeds contend the district court should have granted their motion for new trial based on the court's exclusion of evidence concerning Schaeffer's prescription medications.  Schaeffer told the investigating officer she had prescriptions for Paxil and Xanax, and she had taken Paxil at 7:00 the prior evening but had not taken any Xanax.  On appeal, the Reeds contend "the most probative conduct warranting punitive damages included [Schaeffer's] admissions to police" about these medications.  Therefore, "but for the blanket prohibition of evidence of drug use with alcohol, such minimization of conduct and $1 each punitive responsibility could not have occurred."

Before the officers testified, Schaeffer objected and renewed her motion in limine regarding prescription drugs, stating "without any testimony from a toxicologist or some medical person who has training to say the [Paxil] has some effect, [the evidence] is highly prejudicial."  The court then questioned the Reeds' attorney:

> THE COURT: What medical evidence is there that the Paxil played any role in this accident?
> MR. BRECKENFELDER: Well, I think it is going to be fairly obvious to this jury that that was a contributing factor.
> THE COURT: How so?
> MR. BRECKENFELDER: From simple circumstances the amount and volume of beer with the combination of drugs.  That by itself is a prosecutable offense, short of any type of toxicology evidence.
> THE COURT: All right.  Ms. Shaff [Schaeffer's attorney]?
> MS SHAFF: . . . [T]hey never charged her with drug possession or taking any drugs that she shouldn't be taking . . . .  I don't think that we can have testimony on Paxil without someone to testify about it, and the police officer is not an expert on toxicology.  And it isn't [a] part of why they charged her with OWI; it was related to the alcohol.  [The charge] doesn't say it is related to Paxil

inflaming or doing anything to that alcohol level. So this is introducing a new issue and it is highly prejudicial.

The court ruled "the effect, if any, of Paxil in combination with alcohol is an appropriate subject for expert testimony and not one which the jury should be allowed to speculate in the absence of any such testimony." The court excluded the evidence, stating without expert testimony "there is no other legitimate purpose for eliciting information as to whether and to what extent [Schaeffer] ingested Paxil at any time before this accident." The court's ruling also encompassed Xanax.

"Issues of relevancy and prejudice are matters normally left to the discretion of the trial court; we reverse the trial court only when we find a clear abuse of that discretion." *Shawhan v. Polk Cnty.*, 420 N.W.2d 808, 809 (Iowa 1988). To establish an abuse of discretion, the Reeds must show "the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *See Crookham v. Riley*, 584 N.W.2d 258, 267 (Iowa 1998). While "the rules of evidence do not specifically recognize an objection that a question calls for speculation," Iowa Rule of Evidence 5.611(a) "authorizes the district court to exercise reasonable control over the evidence," thereby authorizing the court "to address objections based on speculation and conjecture." *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 390 (Iowa 2012).

Our supreme court recently discussed the necessity of presenting expert testimony to allow a jury to understand the connection between use of a prescription drug and impaired driving. *State v. Schories*, 827 N.W.2d 659, 666

(Iowa 2013). Here, the Reeds did not identify a toxicologist or medical expert who could speak to the effect of Schaeffer taking a prescription drug the night before the collision. The Reeds presented no expert evidence to show Schaeffer suffered any impairment from taking the prescription medicine. Instead, the Reeds sought to have the jury speculate on the potential effect of a Paxil/alcohol interaction on Schaeffer's driving. The district court did not abuse its discretion in excluding the challenged, speculative evidence. We therefore affirm the district court's denial of a new trial on this ground.

### IV. Exclusion of Police Video

Next the Reeds contend the court abused its discretion in excluding the video recording from the police squad car showing Schaeffer's field sobriety testing. During trial Schaeffer objected to admission of the video. After hearing the parties' arguments for and against admission of the video evidence, the court sustained the objection: "[G]iven the procedural framework that surrounds this particular exhibit, the court finds it is appropriate to grant the request to exclude the squad video or any reference to it." The court concluded: "[The video] should have been identified in response to discovery and exchanged by the parties to avoid exactly the situation we have here today, wherein this is the first time this is being spoken of and presented as a trial exhibit in this case."

On appeal, we will not reverse the district court's imposition of a discovery sanction unless the court abuses its discretion. *See Whitley*, 816 N.W.2d at 385. An abuse is found when the court's ruling "rests upon clearly untenable or unreasonable grounds." *Id.* A police officer incident report, which was supplied

to Schaeffer's counsel, noted that field sobriety testing was completed on video and the footage was saved. But the Reeds first disclosed their intent to show the video to the jury either the day before trial or at trial, despite knowing the video existed before they filed their petition. *See White v. Citizens Nat'l Bank of Boone*, 262 N.W.2d 812, 816 (Iowa 1978) (stating although the penalty—excluding testimony on damages—was severe, "we cannot say the trial court abused its discretion"). We find no abuse of discretion in the court's exclusion of the video recording.

## V. Inadequate Damages

The Reeds further contend the district court should have granted their motion for new trial based on the jury awarding "inadequate compensatory damages" and "nominal punitive damages" due to "jury confusion and actual prejudice."

An aggrieved party may be granted a new trial where the jury awarded "[e]xcessive or inadequate damages appearing to have been influenced by passion or prejudice." Iowa R. Civ. P. 1.1004(4). As to compensatory damages, the district court ruled:

> As framed by the admissible evidence presented at trial, the jury was required to assess as compensatory damages for both plaintiffs their past medical expenses, pain and suffering, and loss of function of body. Although under the evidence presented the jury certainly could have awarded greater amounts, or lesser amounts, to each plaintiff for these certain items of damages, the court concludes that the actual amounts awarded are supported by the evidence and fall within a broad range of what a jury might reasonably assess based on the evidence presented . . . . [T]he compensatory damages awarded are not so out of reason as to shock the conscience or sense of justice, and do not raise a

presumption that the awards are the result of passion, prejudice, or other ulterior motive.

In determining the punitive damage award "was within the jury's discretion and fell within the sizeable range of amounts that the jury might deem appropriate under the circumstances," the district court explained:

> The admissible evidence presented on the plaintiffs' claims for punitive damages included the facts and circumstances of the traffic accident and the plaintiffs' resulting injuries. The jury was also entitled to consider that it was [Schaeffer's] first OWI, and that her blood alcohol level of .09 slightly exceeded the OWI statutory limit of .08. The jury had also been presented with evidence that the defendant had pled guilty to the charge of OWI first offense, that she had already paid a fine and lost her driver's license and had been subject to a 72-hour house arrest. The jury was also informed [Schaeffer] had successfully completed the court requirements of her OWI offense, which included a substance abuse evaluation, that she professed to be very sorry for the motor vehicle accident, and that she was not currently working and did not own any property.

In ruling on motions for new trial, the district court "has broad but not unlimited discretion in determining whether the verdict does substantial justice between the parties." *Cowan v. Flannery*, 461 N.W.2d 155, 158 (Iowa 1990) ("A verdict should not be set aside as either too large or too small simply because the reviewing court would have reached a different conclusion."). When the jury's verdict falls within a reasonable range as indicated by the evidence, courts do not interfere "with what is primarily a jury question." *Id.* ("The determinative question posed is whether under the record, giving the jury its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties.").

We agree with and adopt the district court's thorough and detailed rulings analyzing the jury's award of compensatory and punitive damages. We conclude the district court did not abuse its discretion by denying the Reeds' motion for a new trial based on allegedly inadequate damages. The extent of the Reeds' injuries was disputed. The district court was able to observe the evidence as presented during the trial, and we review the evidence in the light most favorable to the verdict. *See Lara v. Thomas*, 512 N.W.2d 777, 781 (Iowa 1994). Accordingly, we affirm the district court on this issue.

## VI. Schaeffer's Closing Argument

During closing arguments, counsel for Schaeffer pointed out the Reeds did not present medical expert testimony;[6] the Reeds objected. On appeal, the Reeds contend the district court should have granted their motion for new trial based on counsel's improper closing arguments that made "false references to missing evidence."

Our review of the record shows no falsity in the challenged argument. During the discovery phase and at trial, the Reeds consistently took the position medical expert testimony was not necessary to prove their case. Again on

---

[6] Defense counsel argued:

> Most importantly . . . this is a personal injury lawsuit asking you to assess damages for injuries the Reeds suffered and they didn't bring in any medical testimony. They didn't bring in medical records, they didn't bring in doctors, they didn't bring in nurses. They didn't bring in anyone to talk about the medical. You never heard a diagnosis, not one diagnosis. There was no doctor that limited [Mrs. Reed's] activity, you didn't hear a doctor saying how long the problems would last. You heard about all the nurses and doctors running around the emergency department, but none of them were called to testify, and it is [the Reeds'] burden of proof.

appeal, the Reeds acknowledge: "No direct medical evidence was offered by either side." Thus, defense counsel's statements pointing to the absence of such evidence were not false and did not misstate the record. We affirm on this challenge.

### VII. Failure to Instruct on Future Damages

At the conference on jury instructions, Schaeffer objected to the court instructing on future damages, and the court ruled "expert testimony is required under the facts and circumstances as shown in this record to present a claim to the jury for future damages." The Reeds then objected, claiming the instructions are not "complete and correct on the law." In their motion for new trial, the Reeds did not claim the verdict was inadequate due to the court's failure to instruct on future damages. Nevertheless, on appeal they contend:

> The trial court discriminated against [the Reeds] due to their age and retirement by not allowing the proffered future damages instructions or increasing the judgment rendered after the jury's damage paucity. Again, a significant chunk of [the Reeds'] proffered argument for future compensatory damages was erroneously barred.

Assuming error is preserved, we find no support for the claim the district court "discriminated" against the Reeds. To establish they were entitled to future damages, the Reeds were required to prove their alleged future harm was causally related to the collision, and "questions of causation which are beyond the understanding of a layperson require expert testimony." *See Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990) (stating "medical evidence as to the cause of these ailments is noticeably missing from the record" and the plaintiff "must prove more than he felt bad for a period of time"). While the Reeds

testified at trial, neither one has "the medical expertise to explain the relationship" between future symptoms or ailments and the collision. *See id.* at 637. Further, the causal relationship between the collision and the Reed's future damages "is not within the common experience of a jury." *See id.* The Reeds' challenge is without merit.

### VIII. PowerPoint Presentation

During closing argument Schaeffer's counsel used a PowerPoint[7] demonstrative aid without objection by the Reeds. The Reeds argued for the first time in their post-trial motion that the PowerPoint use entitled them to a new trial. Noting the Reeds' failure to object, the district court found waiver. On appeal, the Reeds' counsel acknowledges "his professional failure to specifically object to the presentation generally, or to anything within [it] specifically." But he contends: "Without some fairness due, waiver of this issue is not conceded." The Reeds argue the content of the PowerPoint should have been served on counsel and the court and made part of the record. They bemoan the "rampant unregulated use of presentation software as asserted here by defense counsel" and suggest in their conclusion that PowerPoint software "may convey a message to a jury beyond printed words, including subliminal messages."

Our rules require parties to object at trial at a time when the district court can take corrective action. *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006) (stating the nature of the error must be timely brought to the

---

[7] "PowerPoint is a Microsoft computerized graphics presentation program." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 315 n.2 (7th Cir. 2003).

attention of the district court). The Reeds did not preserve this issue for our consideration on appeal. *See id.*

### IX. Court's Failure to Appoint a Master

In their post-trial motion, the Reeds argued, for the first time, the court should appoint a master under Iowa Rule of Civil Procedure 1.935 because "several matters regarding the impaneling, selection, and deliberations of the jury in this case require further investigation." Specifically, the Reeds complained that a "significant number of jurors in Scott County are failing to report" for jury duty, voir dire was not reported, and the court instructed the impaneled jurors regarding a "pamphlet" they received outside the courthouse, but neither the pamphlet nor the instruction was made a part of the record.

The court ruled "there is simply no basis in law or fact for the appointment of a master." On appeal the Reeds claim they preserved error on this issue: "Impanelment error is not typically preserved under the existing record; however plaintiff's counsel sought expansion of the record to include reference to a master which is denied in error and such is noted in the Post-Trial motions, argument thereon, and following here."

The Reeds first requested a master be appointed in their post-trial motions. As discussed above, raising an issue for the first time after trial does not preserve error. Because the Reeds waived the claimed error, we do not reach the merits of this issue. *See Whitley*, 816 N.W.2d at 390 ("A litigant cannot

sit on a claim of error until the trial is over and make the claim once the result of the trial is unsatisfactory.").

**AFFIRMED.**