## IN THE COURT OF APPEALS OF IOWA

No. 15-2112
Filed February 8, 2017

CAROLYN JEAN WEDDLE and ROBERT WEDDLE,
        Plaintiffs-Appellees,

vs.

MARK DAVID MADSEN and FARNER-BOCKEN COMPANY,
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Carroll County, Gary L. McMinimee, Judge.

        The defendants appeal the admission of medical evidence over their objections. **AFFIRMED.**

        Michael L. Moran of Engles, Ketcham, Olson & Keith, P.C., Omaha, Nebraska, for appellants.

        Marc S. Harding of Harding Law Office, Des Moines, for appellees.

        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Mark Madsen and Farner Bocken Company (Madsen) appeal the district court's rulings that admitted medical evidence relating to Carolyn Weddle's future pain and suffering and past medical expenses. Madsen claims the district court erred in overruling his objections to the evidence because Weddle failed to timely disclose the evidence related to future pain and suffering and failed to provide expert testimony on causation regarding her past medical expenses.

## I.      Background Facts and Proceedings

On June 30, 2014, Weddle filed a petition claiming personal injuries—primarily a broken ankle—as a result of an automobile accident involving Madsen. In July 2014, Madsen served Weddle with discovery interrogatories, which sought, in part, information regarding Weddle's treating physicians, treatment, and any potential expert testimony related to her injuries and treatment. Madsen followed up with requests for production in November 2014. From December 2014 through March 2015, Weddle provided her answers to Madsen's discovery requests, which named Dr. Eric Jensen—a podiatric specialist—as one of her treating physicians. Weddle also provided a medical authorization, which gave Madsen permission to access Weddle's medical records and designated her treating physicians as potential expert witnesses in her supplemented answers. Between March 9, 2015, and the start of trial on November 17, 2015, Weddle failed to further supplement her discovery responses.

In July 2015, Weddle revealed in her deposition that she was still seeing Dr. Jensen every three weeks or so regarding her continued ankle pain related to

the accident. The day before trial, on November 16, 2015, Madsen deposed Dr. Jensen, who discussed his treatment of Weddle both before and after March 2015, as well as some of the long-term consequences resulting from her injuries. Madsen filed a motion in limine, which sought to prevent Weddle from presenting evidence on damages that was not timely disclosed as part of her discovery responses. The court and the parties were then able to go through the transcript, line by line to determine where objections had been made.

After a hearing, the district court sustained the motion in limine in part and overruled it in part. The court excluded portions of the deposition testimony that focused on the permanency of, and possible future surgeries from, Weddle's injuries but allowed portions relating to the type of arthritis Weddle suffered from and the pain management treatment that occurred after March 2015 to be read to the jury.

Madsen also objected to Weddle's medical bills being submitted because Weddle did not call an expert to show causation. The district court found there was sufficient evidence to show the nexus between the injury suffered and the subsequent medical bills to submit to the jury and overruled the objection. The jury found in favor of Weddle and awarded her approximately $117,000 in damages, including $65,000 for future pain and suffering and $29,902.73 for past medical expenses. Madsen appeals.

## II.     Standard of Review

We review a trial court's decisions regarding sanctions for a discovery violation for abuse of discretion. *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 385 (Iowa 2012). "[W]e will not reverse the court's decision to admit

evidence unless the record shows prejudice to the complaining party." *Id.* We also review the admissibility of evidence for abuse of discretion. *Lovick v. Wil-Rich*, 588 N.W.2d 688, 692 (Iowa 1999).

### III. Future Pain and Suffering Award

On appeal, Madsen claims the district court erred in overruling some of his objections and admitting evidence he claimed supported the award of future pain and suffering damages that was not timely disclosed. Weddle asserts the district court acted within its discretion and Madsen was not prejudiced.

"The discovery process seeks to make a trial into 'a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Whitley*, 816 N.W.2d at 386 (quoting *Comes v. Microsoft Corp.*, 775 N.W.2d 303, 311 (Iowa 2009)). Interrogatories are one method of achieving discovery, and parties are required to respond when served with them, absent an objection. *Id.* "Additionally, the rules require a party who has responded to an interrogatory to later supplement or amend the response to include information acquired after the initial response was made when, among other circumstances, the question addressed a matter that bore 'materially upon a claim or defense asserted by any party to the action.'" *Id.* (quoting Iowa R. Civ. P. 1.503(4)(a)(3)).

In this case, it is undisputed that Weddle failed to supplement her discovery requests from March 2015 until the time of trial. Accordingly, we agree with the district court Weddle violated discovery rules. The district court sanctioned Weddle by excluding much of the deposition testimony from Dr. Jensen that directly commented on the permanency of her injuries and possible future surgical procedures resulting from ongoing pain. However, the court

allowed limited testimony regarding her more specific diagnosis of post-traumatic arthritis from March 2015 until the time of trial:

> Q: How does post-traumatic arthritis differ from just arthritis from getting old?  A: Post-traumatic arthritis will occur after a significant trauma.
> Q: As far as the—does she have arthritis in that joint?  A: Yes.
> Q: And based upon the treatment that you have rendered to her, what would have—based upon a reasonable degree of medical probability, what has led to the arthritis in that joint?  A: It was following the trauma that she had sustained to the joint, which would have—with the amount of—the volume of the trauma would have been severe enough to also tear cartilage, which is not directly repairable in this type of surgery.

As to Dr. Jensen's pain management treatment of Weddle post March 2015, the following portion was not objected to:

> Q: You've been seeing her roughly every couple of 4 months; is that correct?  A: Correct.
> Q: And been seeing her pretty regularly, saw her in—basically in May and June and then again saw her toward the end of August and—  A: Uh-huh.
> Q: —September, and then actually saw her just a few days ago; is that correct?  A: Correct.
> Q: And these visits were ones that you were doing for regular treatment; is that correct?  A: These are continued follow-up visits because she still continues with pain in the joint.  And so I've taken the next step to give her some anti-inflammatory.  I believe its piroxicam, or Feldene.  It was an anti-inflammatory.  And then using the cortisone, some Depo-Medrol and Kenalog, to help also to reduce some of the inflammation.  She appears to be responding to that a little bit better.

We do not agree Madsen was prejudiced by the portions of Dr. Jensen's testimony that were a not excluded or not specifically objected to.[1]  The portions

---

[1] The quoted pain treatment testimony was not specifically objected to and thus, was not preserved for appeal.  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  Even if the issue

admitted did not address future pain and suffering Weddle faced; rather, the admitted testimony discussed the diagnosis of a more specific type of arthritis Weddle suffers from, as well as a few pain management treatments he conducted from March until the November trial date. Other than the medical terminology used, Dr. Jensen's testimony is largely complementary to the testimony of Weddle herself. Weddle, age seventy-three, described her mobility limitations and pain she still had at the time of trial:

> Q: Okay. Had you continued to improve even after the time that you went through the physical therapy? A: I don't think I've improved a great—a whole lot. I still do—I still do my exercises and stuff, but as far as improving a lot, no, I don't think so.
>
> Q: You think you've stayed at about the same level then? A: Pretty much.
>
> Q: And are there things that—and we're now about a year and a half down the line from the time that you were injured. Has your condition been pretty much the same through all of this year? A: Yes.
>
> Q: And you're still receiving pain medications, prescription medications? A: Yeah, but I don't take them near as often as he said I do. You know, I don't take—I probably don't take one a week. I do take Ibuprofen.
>
> Q: So you're taking—you're taking pain medication of one sort or another. And is that on a regular basis? A: Maybe two or three times a week.
>
> Q: You are still getting prescription pain medications though? A: No.
>
> Q: Dr. Jensen is prescribing for you? A: He was, yes.
>
> Q: Okay. Are there things that you cannot do now that you used to be able to do before the time of the collision? A: Yes. I can't—I can't walk on uneven ground, like out in the yard. I mean, I can, but it hurts.
>
> Anything that I say I can't do, I can do, but it hurts. I can't walk on an incline, like up my driveway. I can't go up stairs. I have to do them one at a time. I can't go down stairs. I have to do them one at a time.

were preserved, the quoted portion of testimony did not address future pain and suffering beyond that which Weddle testified to herself and therefore, was not prejudicial.

Q: And when you talk about doing it one at a time, could you describe what you mean by that?  A: I take a step down with one foot and then put the other foot on that same step and then take another step and put the same foot there.  I can't go step, step, step, step, like that.
Q: And why do you have to do that?  A: Because it hurts.

Weddle testified extensively about her pain, and physical limitations, including that she expects to have pain the rest of her life.  This testimony, on its own, could have reasonably supported the jury's determination of future pain and suffering damages.

Because we conclude that the admitted portions of Dr. Jensen did not opine as to future pain and suffering but that Weddle's testimony did support the jury's award of future pain and suffering damages, we find Madsen was not prejudiced by the admitted portions of Dr. Jensen's testimony and affirm on that issue.  *See Whitley*, 816 N.W.2d at 385.

### IV.     Medical Expenses

Madsen argues the district court erred in admitting evidence of Weddle's medical expenses because Weddle failed to produce expert testimony that the expenses were incurred from her injuries caused by the accident.[2]

Our supreme court has specifically rejected the imposition of a "requirement for expert testimony in order to establish an element for tort recovery."  *Roling v. Daily*, 596 N.W.2d 72, 75 (Iowa 1999).  "[I]t is unnecessary to present expert testimony on causation in those situations in which the subject 'is within the common experience of laypersons.'"  *Estate of Long ex rel Smith v.*

---

[2] The parties stipulated the charges on the medical bills were fair and reasonable.

*Broadlawns Med. Ctr.*, 656 N.W.2d 71, 83 (Iowa 2002), *abrogated on other grounds by Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009).

In overruling Madsen's objection, the district court stated:

> If you want to argue the causation thing, I don't see why you can't do that but it seems to me that there's sufficient evidence to submit the issue of causation of the treatment and bills to the jury. She's taken from an ambulance. She goes to the doctor, to the emergency room, she's operated on and put plates in the foot and all the rest of the treatment seems to be related to that issue. Perhaps there's things in the medical records that would suggest that there's not causation, but that's a factual issue for the jury. I don't think that an expert opinion saying that this was the cause of the injury and treatment in this case, giving all the other facts, is necessary.

We agree with the district court's analysis that the testimony about the timeline, circumstances, and events that led to the medical bills supported a finding of causation. Additionally, we note Dr. Jensen testified to the nature of the injuries he observed and the treatments he performed. We conclude the jurors, using their common experience, could have reasonably compared the testimony of the witnesses and concluded the medical bills were caused by the automobile accident. *See id.* We affirm.

## V.  Conclusion

Because we conclude Madsen was not prejudice by the admission of Dr. Jensen's testimony and the district court did not abuse its discretion in admitting evidence of Weddle's medical expenses, we affirm.

**AFFIRMED.**