BUSINESS VENTURES, INC., Appellee,

v.

IOWA CITY, Iowa, Appellant.

No. 2–56006.

Supreme Court of Iowa.

Oct. 15, 1975.

Jay H. Honohan of Honohan, Epley & Lyon, Iowa City, for appellant.

William L. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

The City of Iowa City, Iowa, instituted a proceeding to acquire by condemnation approximately two and one-half acres from a 34.6 acre tract owned by Business Ventures, Inc.

The owner appealed the condemnation commission's $16,000 award to district court, where the jury fixed the damages at $47,750. The city appeals here, and we affirm.

The affected unimproved 34.6 acre "Englert tract" lies in the northern part of the city. Taft speedway runs along its southerly boundary, an unnamed road flanks it on the west, and Foster road abuts it on the north. On the east it fronts Dubuque street, a four-lane thoroughfare carrying 10,000 cars per day and leading to an interstate highway 80 interchange a short distance to the north. The eastern portion of the affected property was taken into the city during the 1930's, the balance involuntarily annexed on December 1, 1965. This real estate is level to gently rolling. Most of it lies in the flood plain of the Iowa river. At the time of condemnation the tract was still being farmed.

One of several unique facets of this appeal is that the city took possession of the two and one-half acre area (condemned as of July 29, 1971) several years before the condemnation, possibly with the acquiescence of the then owners. A portion of the condemned realty became part of Dubuque street when it was converted to four lanes in about 1964. In approximately 1968 possession of the balance was taken for a Dubuque street "green belt" established following a 1964 recommendation of "Project Green," an advisory commission established by city ordinance.

Apparently all property taken into the city is automatically classified R1A, for single family dwellings and certain other public-type buildings and parks. In addition, the easterly portion of the subject tract is zoned "valley plain" which permits the property to be used for farming, truck gardens, parks, playgrounds and related uses. Valley plain zoning also allows use as permitted by the overlapping zoning but subject to certain fill and elevation requirements. The area immediately surrounding this plot is zoned R1A, R3A and R3B. R3A zoning permits, *inter alia*, multiple dwellings, clinics and nursing homes. R3B additionally permits apartment hotels and office buildings. The Mayflower, a large multistory student housing complex, is across Dubuque street and approximately 200 to 300 yards south of the Englert tract. A mobile home park is in the area, as is Andover Square apartment house development. A proposed land use study for the north side area of Iowa City, prepared by the city staff, designated the subject tract as medium-high density (apartments). American Oil Co. acquired an interest (not otherwise here pertinent) in a 200 by 250 foot portion of the affected tract along Dubuque street. This small portion was valued by the city assessor at virtually the same amount as

the balance of the plot, a clear recognition of its commercial potential.

The record before us is replete with instances of various owners of the affected tract attempting to secure a change in zoning to permit development for commercial and multiple dwelling purposes, and the city's interest in the plot for park purposes.

Records of the city clerk's office disclosed a 1960 joint request by the "Englert estate" heirs and American Oil Co. to rezone the tract from residential to commercial. After hearings the request was withdrawn. A 1962 request by the same parties was withdrawn pending the adoption of new city zoning ordinances. A subsequent 1964 request was withdrawn after the planning and zoning commission recommended denial. In 1968 the present owner applied for rezoning but in 1969 the necessary ordinance was tabled and deferred.

The Iowa City planning and zoning commission operates as a part of city government under chapter 414, The Code. Minutes of its meetings and of a city council meeting are in the record. The rezoning application of this owner was considered at the commission meeting of April 25, 1968. A number of local residents appeared in opposition. The minutes disclose a commission member,

" * * * reiterated some of the past history concerning the rezoning and development of this tract and *stated* that this land *ultimately has to be used.* If the City will not buy this land for the purpose of a park or other public use, which he felt would be the best solution, then he is afraid if the Commission does not agree to some reasonable proposal, sooner or later less desirable development will occur." (Emphasis supplied.)

Another member stated he agreed "that public use would be the best use for this area." A motion to table the rezoning request carried.

At its meeting of June 6, 1968 the commission voted to recommend to the city council that the request to rezone be approved as limited to R3, contingent upon certain changes. The commission also adopted a resolution "to recommend that the City Council consult with the Park and Recreation Commission to consider this area for the possible use of park space." June 18, 1968 the city council unanimously moved that the use of the "Englert Tract area for a park and recreation area be referred to the Park and Recreation Commission for their recommendation." A date and time were fixed for public hearing on the rezoning request but the matter was apparently continued.

On December 16, 1968 the owner responded to a request from the city's mayor that it write a letter to the mayor and city council "suggesting a price at which they would be willing to dispose of the property, based on the actual cost that they had in the property, providing the city wanted to buy it for park purposes." The record discloses no response from the city to this letter.

March 11, 1969 a revised plan for the Englert tract was submitted to the planning and zoning commission. A lawyer for residents in the area (who had "started a fund for preserving this area as open space") objected, maintaining his clients believed "[a]ll of this land should be used for public open space." A commissioner stated "he thought the Commission was in an awkward position by not knowing if the City is going to purchase the adjoining land for public use." The matter was again tabled.

May 6, 1969, as above noted, the city deferred action on the rezoning request.

At trial these parties stipulated the Englert tract was included in the long range acquisition plans of the city's park and recreation commission and that on February 4, 1970 "the recommendation of the Park & Recreation Commission" was submitted and filed but "the city council * * * has taken no action whatever in connection with the matter as filed by the Park & Recreation Commission." A knowledgeable witness for the city testified it was known

throughout the area "the Park Commission intends to buy the whole Englert tract in the next two or three years."

In 1971 the city commenced this condemnation to legally acquire the real estate it already occupied in and along Dubuque street. Important features of the taking included the loss of all right of access to Dubuque street and loss of visual access to that street resulting from tree growth in the established "green belt" area.

Upon trial in district court, there was no disagreement among the expert witnesses for both sides that the highest and best use of the Englert tract was for highway commercial and apartment use, and this condemnation would destroy its potential for commercial use. The owner's experts were permitted to express their opinions of the before and after values of the tract under existing zoning, and, over the city's objections, without regard to zoning.

The owner's witnesses testified it would be impossible to develop the 34.6 acres under existing R1A zoning as a single family residential area because of the fill requirements, estimated in the record to cost between $200,000 and $338,000.

Experts of the owner and their valuations were: *Schlaegel*, before value with existing zoning $100,000, after $60,000, damage $40,000, before value without zoning $200,000, after $100,000, damage $100,000; *Fisher*, before value with existing zoning $150,000, after $82,500, damage $67,500, before value without zoning $280,000, after $82,500, damage $197,500. City's experts and their valuations were: *Whiting*, before value with existing zoning $76,100, after $72,900, damage $3,200, before value with multi-family zoning $138,400, after $132,640, damage $5,760; *Means*, before value with existing zoning $82,175, after $78,850, damage $3,325.

Appealing, the city asserts the following propositions for reversal: 1) a zoning ordinance is not subject to collateral attack in a condemnation appeal, 2) the owner's expert witnesses may not disregard zoning in arriving at value in a condemnation appeal, and 3) sales of alleged comparable property are inadmissible as substantive evidence when in fact the properties are not comparable.

I. *Issue of collateral attack.*

■ The city argues this issue was raised below by motion to strike and withdraw all evidence "based upon no zoning ordinance being present" and by its objection to jury instruction 10, the substance of which is set out, infra. Objection to instruction 10 did not refer to this concept. The testimony moved to be stricken was not objected to when offered on the ground it constituted a collateral attack on the ordinance. The motion made at close of evidence grounded on this theory was made too late and was properly denied. *Linge v. Iowa State Highway Commission*, 260 Iowa 1226, 1232, 150 N.W.2d 642, 646 (1967); *Ferris v. Riley*, 251 Iowa 400, 407, 101 N.W.2d 176, 180 (1960).

In addition to the above procedural questions which must be resolved against the city, we cannot agree with it on the substantive merits.

■ Although courts generally apply the rule that the validity of an existing zoning ordinance is not subject to collateral attack in a trial for determination of damages in eminent domain, see Annot., 9 A.L.R.3d 291, 303 (1966), ordinarily it is also true the condemning governmental entity is not the zoning authority. Thus in *Reeder v. Iowa State Highway Commission*, 166 N.W.2d 839, 841 (Iowa 1969) we held an owner whose tract was being condemned by the Iowa State Highway Commission could not attack a zoning ordinance of Cedar Rapids. In *Reeder* we approvingly cited *Linge v. Iowa State Highway Commission*, supra, 260 Iowa at 1236, 150 N.W.2d at 648 where the controlling factor was thus pinpointed:

"[T]he validity of this [Cedar Rapids] ordinance is not properly an issue in this action *to which the city is not a party*. It would seem plaintiffs are attempting to make an unallowable collateral attack

upon the ordinance." (Emphasis supplied.)

 While this court has not confronted the situation in which the same entity is both the zoning and condemning authority, other jurisdictions in well reasoned opinions have concluded this circumstance obviates the reason for the "collateral attack" prohibition:

"It is practical and logical to require that such invalid zoning be disregarded where the zoning authority is also the condemnor. Permitting recovery in eminent domain disregarding the zoning restriction combines in one action the right to recover compensation for both the inverse condemnation resulting from the disguised taking in the form of zoning and for the actual taking of the property. The process avoids separating the matter into two causes involving the same subject matter and the same parties. Moreover, the condemning authority is also the zoning government so that much of the vice of a collateral attack on zoning in the usual eminent domain proceeding is not present."—*People, Dept. of Pub. Wks. v. Southern Pacific Transp. Co.*, 33 Cal. App.3d 960, 963, 109 Cal.Rptr. 525, 529 (1973).

See also 4 Nichols on Eminent Domain § 12.322(3), pp. 12–419–421 (rev. 3d ed. 1974) ("Existing zoning may also be disregarded where there is a showing that the zoning ordinance, if literally applied, results in an arbitrary and unreasonable restraint on the use of the property"); Annot., 9 A.L.R.3d 291 at 304–305 (1966) ("Many courts have vigorously condemned as confiscatory the action of a public body in adopting a zoning regulation or denying a petition for rezoning merely for the purpose of decreasing land value or preventing its proper utilization, in order to lower acquisition costs in eminent domain proceedings") and citations; Annot., 36 A.L.R.3d 751 (1971); *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, 108 So.2d 74 (Fla. Ct.App.1958); *Robyns v. Dearborn*, 341

Mich. 495, 67 N.W.2d 718 (1954); *Long v. City of Highland Park*, 329 Mich. 146, 45 N.W.2d 10 (1950); *State v. Gurda*, 209 Wis. 63, 243 N.W. 317 (1932); 29A C.J.S. Eminent Domain § 273(2) at 1197–1198 ("Evidence of adaptability to a particular use which is proscribed by zoning regulations is admissible as bearing on value where removal of restrictions is reasonably probable or where there is a showing that the regulation, if literally applied, would result in an arbitrary and unreasonable restraint on the use of the property"); 4 Nichols on Eminent Domain, supra, § 12.322, p. 12–388 (" * * * a potential condemnor [such as a municipality] may not, through the device of zoning for a use to which the property is not suited, depress its value preliminary to condemning it for a public purpose").

Even where the unity of condemning and zoning authority would permit an owner to attack a zoning ordinance, he shoulders a heavy burden.

Our principles relating to consideration of zoning ordinances are well articulated with supporting citations in *Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 742–743 (Iowa 1969).

 A strong presumption of validity attends a city or town's exercise of this legislative power, which means if the zoning ordinance is facially valid and its reasonableness is fairly debatable it must be allowed to stand. *Id.* at 742.

 The burden to prove the proviso unreasonable, arbitrary, capricious or discriminatory is upon the one asserting the invalidity. *Id.* at 742.

 On the other hand, zoning is an exercise of police power by the municipality, which is a power delegated from the state, and such delegated power must be strictly construed. *Granger v. Board of Adjustment*, 241 Iowa 1356, 1363, 44 N.W.2d 399, 402 (1950).

And we also recall that inevitable danger referred to by Mr. Justice Holmes in *Penn-*

*sylvania Coal Co. v. Mahon,* 260 U.S. 393, 415–416, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922):

> "The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. (Citation) When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more . and more until at last private property disappears. But that cannot be accomplished in /this way under the Constitution of the United States.
>
> * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

█ It is also true that by virtue of changing circumstances a zoning ordinance may operate as an arbitrary and unreasonable restraint. 8 McQuillin, The Law of Municipal Corporations § 25.113, p. 307 (3d ed. 1965); see *Burritt v. Harris,* 172 So.2d 820 (Fla.1965); *Board of County Com'rs of Metro. Dade Co. v. Soto,* 259 So.2d 196 (Fla.Ct.App.1972); *Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 289 A.2d 303 (1972).

Even the city does not suggest that in 1971 farming was a feasible productive use of this 34.6 acre tract. Nor does it suggest why it involuntarily annexed farm ground in 1965 and subsequently taxed a 200 by 250 foot portion at a rate based on the city assessor's actual valuation of $20,407.

Neither does the city in any way challenge the owner's uncontroverted evidence that development for single family dwellings was economically impossible because of the enormous cost of greater fill requirements.

"Where it appears that under existing zoning restrictions property must remain for an unpredictable future period unimproved, unproductive and a source of expense to the owners from heavy taxes, the zoning ordinance is unreasonable as to such property. A zoning of land for residential purposes is unreasonable and confiscatory and therefore illegal where it is practically impossible to use the land in question for residential purposes."—8 McQuillin, supra § 25.45, pp. 118–119.

See also *Anderson v. City of Cedar Rapids,* supra, 168 N.W.2d at 743 ("[I]t is not only proper but highly essential that our municipal officers periodically review and update zoning regulations. Welfare of people, present and future, will not permit adoption of a passive attitude in these matters"); *Keller v. City of Council Bluffs, Iowa,* 246 Iowa 202, 210, 66 N.W.2d 113, 118 (1954) ("So if the only reasonable use of the property is seriously affected by the zoning ordinance, the owner should be entitled to relief * * *"); *People, Dept. of Pub. Wks. v. Southern Pacific Transp. Co.,* supra; *William Murray Bldrs., Inc. v. City of Jacksonville,* 254 So.2d 364 (Fla.Ct.App.1971); *Bassey v. City of Huntington Woods,* 344 Mich. 701, 74 N.W.2d 897 (1956); *Reibel v. City of Birmingham,* 23 Mich.App. 732, 179 N.W.2d 243 (1970); *Appeal of Dance Oil Service, Inc.,* 409 Pa. 392, 187 A.2d 166 (1963); *Schere v. Township of Freehold,* 119 N.J. Super. 433, 292 A.2d 35 (1972), cert. denied, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973); *Summers v. City of Glen Cove,* 17 N.Y.2d 307, 270 N.Y.S.2d 611, 217 N.E.2d 663 (1966).

█ The record made here, coupled with the unusual circumstance of the unity of condemning and zoning authority, justified trial court's permitting an attack on the ordinance, even assuming timely and appropriate objections had been made below.

█ As a preliminary to the issue discussed in division II, a distinction should be drawn between two situations in which the jury's valuation is not strictly bound by

existing zoning restrictions. In the first, zoning can be disregarded where there is substantial evidence demonstrating the illegality of a restrictive zoning ordinance and the zoning authority's failure to rezone while considering acquisition of the subject property. See *People, Dept. of Pub. Wks. v. Southern Pacific Transp. Co.*, supra; *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, supra. In the second and more frequent situation, the jury in an appropriate case is permitted to consider the probability of change in a restrictive (but not illegal) zoning of the property. See *Dolezal v. City of Cedar Rapids*, 209 N.W.2d 84, 89–92 (Iowa 1973); *Jones v. Iowa State Highway Commission*, 259 Iowa 616, 625–626, 144 N.W.2d 277, 282–283 (1966).

In passing we note trial court in instruction 10 (relating to determination of highest and best use) instructed the jury on the second situation. The city objected on the ground there was no competent evidence in the record to show any reasonable probability the real estate might be rezoned, but does not ask us to review trial court's adverse ruling.

In the same instruction trial court also told the jury if it found the owner had proven by a preponderance of the evidence the city "would not rezone the Englert Tract to permit the same to be used for multi-family and commercial development in the near future for the reason that such a rezoning would increase its market value at such time as the defendant may acquire it for use as a park or for any other public purpose, then the highest and best use to which the property was reasonably adapted may be a use permitted by a zoning classification which would permit multi-family and commercial development." The city's only objection to this part of the instruction was "there is no competent evidence in the record to show any reasonable probability that the defendant would not rezone * * as a result of any proposed purchase * * for park purposes."

■ Of course, the objection accepted the concept of an attack on the zoning ordinance and related only to the sufficiency of the evidence to submit the issue, a matter on which trial court was vested with considerable discretion. See 4 Nichols on Eminent Domain, supra, § 12.322(2), p. 12–418; *Board of County Com'rs v. Vail Associates, Ltd.*, 171 Colo. 381, 468 P.2d 842 (1970). The city did not object on the ground the instruction failed to require the jury to first find the present zoning was arbitrary and unreasonable, depression of market value was the city's sole motive, or that the city acted in bad faith. Such an objection could have been sustained; in other jurisdictions the burden has been placed consistently on condemnee to prove one of these elements to sustain an attack on a zoning ordinance. See *People, Dept. of Pub. Wks. v. Southern Pacific Transp. Co.*, supra; *Frederickson v. Hjelle*, 149 N.W.2d 733 (N.D.1967); *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, supra; Annot., 9 A.L.R.3d 291 (1966).

The city now intimates the above instruction gave the owner the best of both worlds by submitting the theory of reasonable probability of rezoning and the theory the city would not rezone because it would increase the value at a time when the city contemplated acquisition of the tract for park purposes. As indicated above, we do not place a stamp of approval on the instruction. It is sufficient to note this objection was not raised below. Had it been, trial court would have been confronted with the question whether the established presumption that public officers will do their duty (and rezone an illegally zoned area) would apply. See *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.*, supra, 108 So.2d at 83.

We find no error with respect to the first proposition raised by the city.

II. *Issue of permitting experts to disregard zoning in testifying to valuations.*

As we have already indicated, the uncontroverted record in this case demonstrates

the highest and best use of the subject property was for highway commercial and multi-family residential purposes. When owner's experts were asked their opinion of the value of the property, (without regard to zoning) before and after the date selected for condemnation the city typically objected that, "[T]his is * * * incompetent, irrelevant and immaterial. It calls for the opinion, conclusion of this witness for which there is no proper foundation shown in the record. It is asking this witness to speculate that there is no zoning requirements on this particular piece of property, and such is beyond the opinion testimony of this witness."

██ Of course, the major portion of the objection is so lacking in required specificity it would not serve to preserve error based on trial court's adverse ruling. *State v. Raue,* 214 N.W.2d 162, 163 (Iowa 1974); *Heth v. Iowa City,* 206 N.W.2d 299, 302 (Iowa 1973); *Oehlert v. Kramer,* 205 N.W.2d 723, 726 (Iowa 1973); *Helland v. Yellow Freight System, Inc.,* 204 N.W.2d 601, 606 (Iowa 1973); *State v. Davis,* 196 N.W.2d 885, 894 (Iowa 1972).

The same issue was apparently before this court in *Hall v. City of West Des Moines,* 245 Iowa 458, 467, 62 N.W.2d 734, 739 (1954) where the condemnor unsuccessfully argued trial court erred in permitting the owner's witnesses "to testify to the value of the land for industrial purposes" when the zoning ordinance made the property unavailable for industrial purposes. We declined to reverse, pointing out evidence of industrial growth in the area.

██ In any event, under the instructions which became the law of this case the jury was permitted, following certain findings, to consider the highest and best use of the property without regard to zoning. It follows the jury was entitled to know the experts' opinions relating to the value of the subject property without the alleged illegal zoning restraint. In no other way could the jury members fix the appropriate damages.

III. *Issue of admission of evidence of other sales.*

The city asserts trial court allowed testimony regarding comparable sales which were not comparable, the critical difference being, according to the city's brief, in zoning of the alleged "comparables."

The owner's experts referred to sales of property zoned commercial or multi-family. See *Frederickson v. Hjelle,* supra at 743. The city's witnesses testified for the most part concerning sales of property zoned R1A (single family dwellings).

██ Of course, since *Redfield v. Iowa State Highway Commission,* 251 Iowa 332, 99 N.W.2d 413 (1959) evidence of comparable sales has been admissible as substantive evidence of value. Like other evidence, it is for the jury to determine its weight and credit. *Belle v. Iowa State Highway Commission,* 256 Iowa 43, 47, 126 N.W.2d 311, 313 (1964). Other sales—not comparable in the *Redfield* sense—may also furnish a foundation for an expert's opinion testimony. See *Bellew v. Iowa State Highway Commission,* 171 N.W.2d 284, 290–291 (Iowa 1969); *Thornberry v. State Board of Regents,* 186 N.W.2d 154, 159 (Iowa 1971) and citations. Much must be left to the sound discretion of the trial court as to whether or not the conditions are met which make the admissibility rule applicable. *Perry v. Iowa State Highway Commission,* 180 N.W.2d 417, 420 (Iowa 1970). While the properties must be "similar" enough that the sales assist the jury, we have noted, "Jurors are men and women of the world, and when the differences between the properties are brought out in evidence * * * the jurors can make comparisons in value." *Id.*

But in the case *sub judice* our holding in divisions I and II carries the resolution of this issue: as the jury could permissibly disregard zoning in these circumstances, it was entitled to hear evidence from which it could determine the before-condemnation

valuation of the Englert tract, without the R1A restriction.

In addition, we note the city by cross-examination solicited and received evidence of several of the comparables of the owner's first valuation expert.

■ The court's jury instruction 12 would permit the jury, upon finding *either* party's evidence disclosed a sale of a similar tract, to consider the sale price as independent evidence of the value of the Englert tract. If there was no competent evidence the owner's "comparable" sales were similar, the instruction was of course erroneous. *Martinson v. Iowa State Highway Commission*, 257 Iowa 687, 696, 134 N.W.2d 340, 345 (1965); *Wicks v. Iowa State Highway Commission*, 254 Iowa 998, 1006, 119 N.W.2d 781, 786 (1963). But the city made no objection, nor did it request an instruction which would limit the purpose for which the testimony could be considered. *Lehman v. Iowa State Highway Commission*, 251 Iowa 77, 86, 99 N.W.2d 404, 409 (1959). In fact, jury instruction 12 in all material respects was identical to a requested instruction submitted by the city. Under the record made here we believe this instruction became the law of the case, *Hamdorf v. Corrie*, 251 Iowa 896, 902, 101 N.W.2d 836, 840 (1960), and the city thereby waived the objections made to this evidence as it was introduced.

We are persuaded trial court did not err in any of the aspects urged by the city, and therefore affirm.

Affirmed.