# IN THE SUPREME COURT OF IOWA

No. 19–1582

Submitted February 22, 2022—Filed May 6, 2022

**IN THE MATTER OF THE CONDEMNATION OF CERTAIN RIGHTS IN LAND FOR THE EXTENSION OF ARMAR DRIVE PROJECT BY THE CITY OF MARION, IOWA.**

**PHYLLIS M. RAUSCH,** as Trustee of the **WILLIAM J. RAUSCH FAMILY TRUST,**

>    Appellant,

vs.

**CITY OF MARION, IOWA,**

>    Appellee.

---

>    On review from the Iowa Court of Appeals.

>    Appeal from the Iowa District Court for Linn County, Patrick R. Grady, Judge.

>    A property owner seeks further review of a court of appeals decision affirming a condemnation award and the district court's evidentiary rulings precluding the owner from testifying about comparable sales. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Dean A. Spina (argued) of Bradley & Riley PC, Cedar Rapids, for appellant.

Robert W. Goodwin (argued) of Goodwin Law Office, P.C., Ames; Kara L. Bullerman of Allen, Vernon & Hoskins, P.L.C., Marion, for appellee.

**WATERMAN, Justice.**

Landowners are generally allowed to give opinion testimony on the value of their own property. But should owners of commercial property who do not qualify as experts be allowed to support their valuation by testifying about allegedly comparable sales of property owned by others? This appeal presents that question. An Iowa municipality condemned part of the owner's undeveloped land for a road. The parties disagreed on the just compensation award. The district court allowed the owner to testify to his opinion on the site's reduction in value resulting from the taking but granted the municipality's motion in limine barring his evidence of comparable sales on the grounds that the owner relied on hearsay, lacked personal knowledge of those transactions, and was unqualified as an expert. The property owner appealed, and the court of appeals affirmed.

On our review, for the reasons explained below, we disagree with the district court's analysis on hearsay and personal knowledge. Public real estate records are readily admissible into evidence and this owner gained personal knowledge by reviewing the courthouse records and visiting the other properties. But we affirm the exclusionary ruling because this owner, a former restaurant manager, was not qualified as an expert under Iowa Rule of Evidence 5.702 to offer opinion testimony that sales of other commercial property were comparable where that opinion required technical or specialized knowledge. We decline to impose a categorical rule disallowing lay owner opinion testimony about specific comparable sales. On this record, the district court did not abuse its discretion

by limiting the owner's testimony given his lack of expertise and the complexity of these commercial real estate valuations.

### I. Background Facts and Proceedings.

In 1969, Phyllis and William Rausch bought a house on 20 acres of farmland in Linn County. The Rausch family farmed the land and lived there until 1977, when they turned the house into a rental property. In 1990, the Iowa Department of Transportation condemned part of the land and left the family with 9.57 acres. The house was removed from the land before 2017. The property is now vacant, undeveloped land that is partially wooded with a steep ravine. The site is ungraded and lacks commercial road access, although it is adjacent to a divided four-lane highway. The property is zoned general commercial and is located near the Lindale Mall development area.

The property is now owned by the William J. Rausch Family Trust (Trust). After William's death in 2002, Phyllis became the primary beneficiary of the Trust and the trustee. According to the Trust's attorney, Phyllis "receives all of the income from the trust" and "can invade the principal for her health, education, support and maintenance at her discretion." But, "[s]he has not done so." If Phyllis passes away and the property remains in the Trust, the Trust property will be divided evenly between William's five children, one of whom is James Rausch.

James had lived on the property with his family. He is forty-nine years old. He has an English degree from Coe College. He has been a restaurant manager since finishing college. He opened restaurants in Columbus, Ohio; Minneapolis,

Minnesota; and Nashville, Tennessee. Two years before trial, he took a leave of absence from this work and began taking care of his mother full-time. James handles paying her bills, taking her to medical appointments, and arranging her medications. He also manages her assets which include her home, a barbershop, four rental houses, and over 700 acres of farmland that is leased out to a farmer. Phyllis recently sold 76 acres at $37,000 an acre, and James studied other properties in the area to determine where to reinvest the money to avoid paying capital gains taxes through a section 1031 like-kind exchange. *See* 26 U.S.C. § 1031.

James is not an appraiser or real estate agent. He has never bought or sold real estate himself. His only experience in buying and selling real estate involved helping his mother buy two pieces of farmland.

In 2017, the City of Marion condemned part of the 9.57 acres owned by the Trust to connect Armar Drive to Highway 100, Collins Road. The City took 0.63 acres to extend Armar Drive to intersect with the highway, which also required a temporary construction easement of 0.76 acres. The road extension split the property into two parts separated by Armar Drive: a small triangular section (0.61 acres) and a larger section (8.33 acres). The Trust retained an appraiser who opined the loss in value was $280,625. On March 29, the compensation commission awarded $403,000 as just compensation, 44% higher than the $280,625 figure put forward by the Trust's appraiser in that proceeding. Nonetheless, the Trust was dissatisfied with the result and sought $1 million in

damages. The Trust did not retain an appraiser willing to testify to a higher amount than $403,000.

The Trust appealed the commission's award and demanded a jury trial. The City responded, stating, "[T]he only appealable issue is the difference in fair market value of the [property] immediately before and immediately after the acquisition on March 29, 2017." The district court entered a scheduling order requiring expert disclosures by April 1, 2018, for the Trust, and by June 1, 2018, for the City.

On May 4, after the Trust failed to designate an expert, the City moved for summary judgment and to exclude any expert witnesses on behalf of the Trust. The Trust resisted the motions. The City timely designated an expert who opined that just compensation was $82,900. The Trust informed the district court that it planned to call Phyllis to testify as to her opinion of value and to cross-examine the City's expert to prove its damages. The Trust filed Phyllis's affidavit and argued Phyllis's health issues contributed to discovery delays and that the exclusion of expert witnesses would be inappropriate. The City moved to strike Phyllis's affidavit. The district court denied the motions for summary judgment and to strike the affidavit but granted the motion to exclude the Trust's expert witnesses.

On April 12, 2019, the City filed a motion in limine requesting that the court exclude "[t]estimony or evidence of sales of real estate that are asserted by the [Trust] to be comparable to the [property] unless a foundation is laid by the [City's] expert witness" and "[t]estimony or evidence by the assessor's website of

real estate comparable to the [property] because that would be on the assumption that the assessor has the expertise to express an opinion of comparability." Two days later the Trust filed its pretrial statement identifying James as a witness instead of Phyllis. Phyllis was unable to serve as a representative of the Trust at trial because of her medical condition.

The City objected to the Trust's designation of James and argued he was not properly designated as an expert, nor was he qualified to testify as an expert. The City further argued that an "[o]pinion testimony of a lay person concerning comparable sales and values is not appropriate in a condemnation appeal. Opinion testimony of a lay person must be based on firsthand knowledge of the witness," which James lacks because he was not "the buyer, or the seller or the realtor involved in" the comparable sales included in the Trust's exhibit list.

In a ruling five days before trial, the court prohibited James from testifying about comparable sales because such testimony would not be "based on his personal experience or familiarity with the transactions he wishes to call comparable and his information about the market value of the subject property is based on hearsay about how others valued the property at different times."

The Trust submitted an offer of proof on three comparable sales. In his deposition and offer of proof testimony at trial, James described his investigation into the other sales using the assessor's website to review the public real estate records. He also visited each property. He compared each site's highway access to the Trust property and their location, size, sale price, and date of sale. He testified that he found these sales while he was trying to help his mother reinvest

proceeds from a sale of farmland, not at the request of the Trust's attorney for the condemnation proceeding. James conceded he otherwise had no "firsthand personal knowledge" of the three sales and that he is not an appraiser or realtor. The Trust's offer of proof included warranty deeds for a "subdivision proceeding or a tax parcel" and describes the three sales James considered comparable.

The first sale, the Fiesta Del Sol property, sold in September 2015 for $580,000 (twenty-one dollars per square foot). It is located on Highway 100 about a half-mile away from the Rausch family's property, closer to the Lindale Mall development area. The new property owners demolished the structure on the property to create vacant land on which to build retail stores. Highway access was limited by a median, allowing traffic in only one direction to turn into the property. The second sale, the UnityPoint property, was purchased as vacant land in June 2016, with 3.23 acres, access to a divided four-lane highway controlled by a traffic light, and a sale price of around $9 per square foot. The land was fairly level with utilities. The new owners built medical offices on the property. The third sale, the Kwik Star property, had 1.95 acres, which sold for around $10 per square foot in July 2015. After the sale, the owners demolished a bank to construct a gas station and convenience store. These properties were located near Westdale Mall, which is the secondary shopping district for the area.

Jury trial commenced on August 19. The parties agreed that James could testify as an owner. James testified to his background, his experience in helping his mother manage her properties, and the condition of the property at issue before and after the partial taking. But the district court renewed its ruling that

James "is not qualified to testify as to comparable sales. That's pretty clear. He's -- I will let him testify as to what he believes the value is and that it's -- that he got it from looking on the internet, but nothing about a specific sale." James was allowed to testify about the development activity in the area and opined how the partial taking limited development opportunities for the Trust property. The court barred James from testifying as to the three sales in his offer of proof or any other allegedly comparable sales. James testified to his opinion that the Trust land should be valued at $12 per square foot, or $522,720 per acre, and that the fair market value of the property decreased by around $800,000 after the partial taking.

During the Trust's offer of proof, James was corrected by his own counsel:

Q. And you bought farmland?

A. Yeah.

Q. Do you recall approximately what the per acre price was?

A. It was -- The total was 576,000 for 115 acres. So it was -- I don't recall offhand. It was -- Almost 9,000 an acre, I believe.

Q. The number you said, that 115 acres is only about 5,000 an acre, you said?

A. Well, it was more than that.

At trial, James testified that he knew how to use the assessor's website and that he had pulled up from the website information on three real property transactions involving land along Highway 100 that he believed were comparable, although two of them were "across town." He maintained that those

comparable sales supported a value of $12 per square foot for the Trust's land along Highway 100.

The valuation testimony that James was allowed to give included the following:

> Q. Okay. You mentioned that, in your view, the property before the taking had a value of 12 dollars a square foot. You said that was including all of the area, the 9.57 acres, is that correct?
>
> A. Yes.
>
> Q. Do you know what that equates to in terms of a dollar amount?
>
> A. The five point -- five million and something.
>
> Q. Roughly five million, you said?
>
> A. Yes.
>
> Q. Do you know what you believe the value of the property to be after the taking?
>
> A. 410 to '20 thousand. 420 thousand, around there.
>
> Q. 400 -- Four million or --
>
> A. I'm sorry. Four million and --
>
> Q. Five million to four million?
>
> A. Yes.
>
> Q. Is that what you're saying?
>
> A. Yes.
>
> Q. Is that rounding numbers?
>
> A. Yeah. So like five million something minus like almost 700,000 maybe.
>
> Q. So I need a number. What do you think?
>
> A. It's four million 300 thousand -- 200 thousand.

Q. I don't want to -- You choose the number that you think it's worth after the taking.

A. The 8.33 acres that's left in that triangle portion, what it's worth?

Q. What is left to you is the triangle portion and the 8.33 acres that's left to the Rausch family. What is that worth after the taking, viewing it --

A. Four million 200 thousand.

Q. Four million 200 thousand?

A. Sure.

Q. So the difference being roughly 800 thousand?

A. Yeah, roughly.

To support its case, the City called a certified appraiser. The appraiser's testimony emphasized that the Trust land was raw undeveloped land, with trees on it, no grading, and no facilities. Later, the Trust's attorney cross-examined the City's appraiser about the three comparable sales James had wanted to use. The appraiser said he did not use any of them because they were all developed lots; in fact, two of them had existing buildings. None of them involved undeveloped land. The jury awarded the Trust $82,900 in damages, the exact amount recommended by the City's expert. The Trust appealed the resulting judgment.

On appeal, the Trust argues the district court erred by excluding its comparable sales evidence. The City argues the district court correctly permitted James, as an owner, to give an opinion of value and excluded the Trust's comparable sales evidence because James lacked firsthand personal knowledge of the sales and was unqualified to testify as an expert. The City does not

challenge James's status as an owner of the property based on his interest as a contingent beneficiary. We transferred the case to the court of appeals, which affirmed on the ground that James lacked personal knowledge of the comparable sales. The Trust applied for further review, which we granted.

## II. Standard of Review.

We review evidentiary rulings for abuse of discretion. *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001) (en banc). " 'An abuse of discretion occurs when the trial court "exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." ' " *Id.* (quoting *State v. Greene*, 592 N.W.2d 24, 27 (Iowa 1999), *abrogated on other grounds by State v. Crawford*, ___ N.W.2d ___, 2022 WL 815299 (Iowa Mar. 18, 2022)). Misapplying a rule of law is an abuse of discretion. *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa 2016) ("A ground is clearly untenable when the court relies on an improper legal standard or applies the law in error."). The district court has "wide latitude regarding admissibility" and we will only reverse "where the losing party was prejudiced by an unreasonable decision." *Kurth*, 628 N.W.2d at 5 (quoting *State v. Sallis*, 574 N.W.2d 15, 16 (Iowa 1998)). "Generally, hearsay rulings are . . . reviewed for errors at law." *Id.*

## III. Analysis.

We have long allowed landowners to testify about the value of their own property. *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 213 (Iowa 1980) (en banc) ("In ascertaining the value of property, its owner is a competent witness to testify as to its market value."). This is known as "the property owner rule." *Reid Rd.*

*Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011) ("Generally, a property owner is qualified to testify to the value of her property even if she is not an expert and would not be qualified to testify to the value of other property."). "The rule is based on the presumption that an owner will be familiar with her own property and know its value." *Id.* at 853. But as we show below, courts are divided on whether lay owners can testify about comparable sales to support their valuations.

We have not revisited the property owner rule in condemnation cases since Iowa adopted most of the Federal Rules of Evidence in 1983. The district court is to perform a gatekeeper role in determining the admissibility of opinion testimony on comparable sales. *See* Iowa R. Evid. 5.702. Key factors are the owner's valuation experience and the expertise required to evaluate the purportedly comparable sales. By his own admission, James is not an expert on commercial real estate valuations, and the district court so ruled.

We begin our analysis by examining the use of comparable sales. Next, we will review the district court's rulings excluding James's evidence of other sales on the grounds of hearsay and lack of personal knowledge. We will then confront the dispositive issue of whether the district court abused its discretion by ruling that James, a lay owner, was unqualified to testify about the three allegedly comparable sales of commercial property.

**A. Comparable Sale Evidence Generally.** For partial takings, damages are measured by "the difference in the fair market value of the subject property immediately before and immediately after condemnation." *Van Horn v. Iowa Pub.*

*Serv. Co.*, 182 N.W.2d 365, 371 (Iowa 1970) (quoting *Jones v. Iowa State Highway Comm'n*, 144 N.W.2d 277, 280 (Iowa 1966)). We define fair market value as "the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept." *Id.* (quoting *Jones*, 144 N.W.2d at 280). A landowner "is damaged to the extent his property is diminished in value by the condemnation" and has the burden to demonstrate he sustained damage. *Id.* at 370–71 (quoting *Jones*, 144 N.W.2d at 280).

> Thus, a landowner is permitted to show all competent facts which an owner would properly and naturally press upon the attention of a buyer with whom he is negotiating a sale and all other competent facts which would naturally influence a person of ordinary prudence desiring to purchase—not as affording a measure of recovery but as tending to disclose the real character and condition of the property and as support for the estimates of value given by the witnesses.

*Id.* at 371.

In condemnation cases, "[t]he rule as to competency of value witnesses is to be liberally construed in favor of admissibility and if there is evidence of knowledge of values the extent of the witness qualifications ordinarily goes to the weight of the evidence rather than to its admissibility." *Iowa Dev. Co. v. Iowa State Highway Comm'n* (*Iowa Dev. Co. II*), 122 N.W.2d 323, 327 (Iowa 1963) (allowing a corporate owner's president to give a valuation opinion based in part on the value of an adjacent lot, owned by a different party). Property owners are permitted to give opinions on the value of their own property. *See Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380–81 (Iowa 1983) ("As owners of the property, the plaintiffs could properly express their opinion as to these values."); *Redfield v. Iowa State Highway Comm'n*, 99 N.W.2d 413, 415 (Iowa 1959) (owner testified

to the value of his land before and after a taking). Owners acquire knowledge of property values through life experiences in managing, owning, and enjoying their property.

Real estate valuations are commonly based on comparable sales. "It should be kept in mind that evidence of comparable sales is germane to the question of value before condemnation." *Belle v. Iowa State Highway Comm'n* (*In re Primary Rd. 1–80*), 126 N.W.2d 311, 314 (Iowa 1964). Since our decision sixty-two years ago in *Redfield v. Iowa State Highway Commission*, "evidence of comparable sales [is] admissible as substantive evidence of value." *Bus. Ventures, Inc., v. Iowa City*, 234 N.W.2d 376, 384 (Iowa 1975); *see also Redfield*, 99 N.W.2d at 416. "Like other evidence, it is for the jury to determine its weight and credit." *Bus. Ventures, Inc.*, 234 N.W.2d at 384. "However, it must be shown that there is sufficient similarity to the subject property before such evidence is admissible." *Bellew v. Iowa State Highway Comm'n*, 171 N.W.2d 284, 288 (Iowa 1969) (quoting *Martinson v. Iowa State Highway Comm'n*, 134 N.W.2d 340, 344 (Iowa 1965)).

To be considered comparable, the sales "need not be identical but must have a resemblance in order to be shown in evidence." *Iowa Dev. Co. v. Iowa State Highway Comm'n* (*Iowa Dev. Co. I*), 108 N.W.2d 487, 492 (Iowa 1961). "Size, use, location and character of the land and time, mode and nature of the sale all have a bearing on the admissibility of such evidence." *Id.* "While the properties must be 'similar' enough that the sales assist the jury, we have noted, 'Jurors are men and women of the world, and when the differences between the

properties are brought out in evidence . . . the jurors can make comparisons in value.' " *Bus. Ventures, Inc.*, 234 N.W.2d at 384 (omission in original) (quoting *Perry v. Iowa State Highway Comm'n*, 180 N.W.2d 417, 420 (Iowa 1970)).

District courts have discretion to determine which sales are similar enough to be admissible. *Id.*; *Belle*, 126 N.W.2d at 314 ("There was enough similarity in the properties, however, so that the admission of the evidence was within the discretion of the court."); *see also Redfield*, 99 N.W.2d at 415 (noting large differences in expert opinions "lends force to appellants' claim that the actual records of sales of comparable properties from which the witnesses gained their knowledge are more reliable evidence than mere opinions of the experts").

Comparable sales are admissible as substantive evidence.

> Knowledge of a witness of other sales may be and frequently is a foundation for opinion testimony, but evidence of actual sales of comparable property is now substantive evidence as distinguished from opinion testimony. It frequently happens, . . . that opinion testimony and evidence of comparable sales comes from the same witness. Evidence of comparable sales may be used to test the qualification of an opinion witness and also as substantive evidence.

*Belle*, 126 N.W.2d at 314.

In sum, we have long recognized that property values are influenced by the prices obtained in comparable sales, and liberally allow evidence of such sales:

> Everyone recognizes that the first thing a prospective buyer of any kind of property wants to know is what other people have paid for like property in the recent past. . . . But when the valuation of realty is the problem, court and jury are suddenly cut off from informative sources and forced to rely (theoretically) upon opinions based principally upon undisclosed prices of other sales. . . . The main objective of the rule—avoidance of collateral issues—has proved

> abortive and the procedural aspect of the trial has changed for the
> worse.

*Redfield*, 99 N.W.2d at 418 (omissions in original) (quoting *County of Los Angeles v. Faus*, 304 P.2d 257, 269–70 (Cal. Dist. Ct. App. 1956) (Ashburn, J., concurring) (encouraging reconsideration of the prohibition against the presentation of comparable sales evidence on direct examination), *vacated*, 312 P.2d 680, 683–85 (Cal. 1957) (en banc) (overruling prohibition)).

The fighting issue in this case is whether James was qualified to establish that the three sales of commercial property he identified were comparable. Against this backdrop, we turn to the evidentiary rulings in this case.

**B. The Hearsay Ruling.** James's exhibits in his offer of proof included deeds for the other property sales from which the sale price could be calculated within $500 based on the transfer tax paid. *See* Iowa Code § 428A.1(1) (2017) (imposing transfer tax and requiring declaration of value to accompany deed); *see also id.* § 428A.5 (requiring the amount of transfer tax to appear on the face of the recorded instrument). The district court excluded evidence of James's other sales on hearsay grounds. But public records of real estate sales are readily admissible into evidence through exceptions to the hearsay rule and by statute. *See* Iowa Rs. Evid. 5.803(8)(A) (hearsay exception for public records), 5.803(14) (hearsay exception for records of documents that affect an interest in property), 5.803(15) (hearsay exception for statements in documents that affect an interest in property); *see also* Iowa Code § 622.36 ("Every instrument in writing affecting real estate, . . . which is acknowledged or proved and certified as required, may be read in evidence without further proof."). *See generally* Iowa Rs. Evid. 5.901,

5.902 (authentication of records). We conclude the district court erred by excluding James's testimony and evidence of comparable sales on hearsay grounds.

**C. The Personal Knowledge Ruling.** The district court also excluded the Trust's evidence of comparable sales on the grounds that James lacked personal knowledge because he was not the buyer, seller, or realtor in the other sales transactions. James acquired his knowledge of the other sales by reviewing public real estate records readily admissible into evidence and by personally inspecting the other sites.

The personal knowledge requirement for lay witness testimony is set forth in Iowa Rule of Evidence 5.602, which provides,

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under rule 5.703.

Rule 5.602's personal knowledge requirement is easily satisfied. "Lay witnesses may testify to their opinions or inferences if the testimony is rationally based on the witness's perceptions and it is helpful to giving the jury a clear understanding of either the witness's testimony or a determination of a fact at issue in the case." *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 390 (Iowa 2012); *see also* Iowa R. Evid. 5.701 (lay witness opinion testimony). "[A] sufficient factual foundation must be established showing the witness's opinion is based on firsthand knowledge and 'personal knowledge of facts to which the observed facts are being compared.' " *Whitley*, 816 N.W.2d at 390 (quoting 7 Laurie Kratky Doré,

*Iowa Practice Series: Evidence* § 5.701:1, at 628–31 (2011 ed.)). James met the required showing by reviewing the public land records and personally visiting the properties.

In *Whitley v. C.R. Pharmacy Service, Inc.*, the plaintiff in a medical malpractice action argued the district court "abused its discretion by allowing the pharmacy manager . . . to testify to his conclusion about the meaning of the line through the name of [her doctor's] receptionist that was written on the delivery log." 816 N.W.2d at 390. The pharmacy manager's testimony was limited to his conclusions "based on his knowledge of what a mark on delivery logs typically meant in his experience with the pharmacy's delivery system." *Id.* We concluded the plaintiff's argument is essentially "that the court allowed a lay witness to improperly opine about an ultimate issue at trial."[1] *Id.* We held the district court did not abuse its discretion by permitting this lay opinion testimony because "the pharmacy established [the manager] had personal knowledge of the pharmacy's delivery log procedures and that he conducted an investigation into the logs and receipts in [the] case before reaching his conclusion." *Id.* at 390–91. The manager was not personally involved in any transactions; rather, he reviewed the evidence of the transactions and provided his opinion.

Similarly, James was not personally involved in the transactions for each identified sale but he reviewed information about each sale when trying to

---

[1]In condemnation cases, the ultimate issue is the amount of damage a landowner's property sustained as a result of the taking—not the value of other comparable properties. *Van Horn*, 182 N.W.2d at 371 ("Value of the various tracts involved before condemnation is not the ultimate issue. It is the starting point. But the question is how much each farm has been damaged or reduced in value by the transmission installation and easement.").

reinvest proceeds from the sale of farmland. The Trust laid the foundation to demonstrate his personal knowledge of the other sales. The district court erred when it concluded James lacked personal knowledge because he was not "the buyer, or the seller or the realtor involved in" the sales included in the Trust's exhibit list. *See City of Grand Rapids v. H.R. Terryberry Co.*, 333 N.W.2d 123, 126–27 (Mich. Ct. App. 1983) (concluding the owners of condemned property properly relied on comparable sales because the owners "had personally inspected, at least briefly, each of those buildings" or were at least "familiar with their exterior condition and the neighborhood in which they were located"); *S.C. State Highway Dep't v. Wilson*, 175 S.E.2d 391, 397 (S.C. 1970) (allowing property owner's testimony of comparable sales when her knowledge of such sales was gained from reading abstracts of recorded deeds because "[w]here comparable sales are in part a basis of the opinion as to value, even expert witnesses, as often as not, do not have firsthand information, or personal knowledge, thereabout" so the source of her knowledge went to "the weight of the opinion evidence being offered rather than its competency or admissibility").

**D. Are Lay Property Owners Permitted to Testify about Comparable Sales of Commercial Property?** James admittedly is not an appraiser or valuation expert. The district court ruled that James cannot support his valuation opinion as the owner of the property by testifying about comparable sales, because he is unqualified to do so. We have not previously addressed whether lay owners can testify about specific comparable sales to support the valuation of their own land.

As noted above, a property owner generally is allowed to testify as to its value. Their valuation can be a *lay* opinion under rule 5.701, which is permissible because the owner is presumed to know their own property. *See generally U.S. ex rel. Tenn. Valley Auth. v. An Easement & Right-of-Way over 6.09 Acres*, 140 F. Supp. 3d 1218, 1240–42 (N.D. Ala. 2015) ("[T]estimony by a witness relating the value of his own land or property may be admissible as a lay opinion.") (surveying authorities). Rule 5.701 "does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." *Id.* at 1241 (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendments). So whether owners can expand their testimony beyond their lay opinion of the value of their property and testify about what they believe to be comparable sales depends on the basis for that testimony. But an owner who relies on technical or specialized knowledge to weigh in on comparable sales and how to make adjustments to them in order to apply them to the valuation of the subject property has moved into the realm of expert testimony and must qualify as such under rule 5.702. *See id.* at 1241–44 (exploring the interplay between Federal Rules of Evidence 701 and 702 on opinion testimony in condemnation cases); *see also State v. Boothby*, 951 N.W.2d 859, 876, 876 n.2 (Iowa 2020) (discussing the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702).

According to some authorities, "while property owners may always testify as to their opinion concerning the value of their own property in a condemnation action, they may not support that opinion by reference to comparable sales

unless they qualify as an expert." 32 C.J.S. *Evidence* § 888, at 679–80 (2020); *see also Bennett v. Commonwealth, Dep't of Highways*, 417 S.W.2d 143, 145 (Ky. 1967) (explaining that, in order to testify using comparable properties, "the owner of property must qualify the same as any other expert witness. Once he does, there is no reason why he cannot cite sales of comparable property located within the range of his expert knowledge"); 5 Julius L. Sackman, *Nichols on Eminent Domain* § 23.03, at 23–30 (3d ed. 2013) ("Once the owner qualifies as an expert witness, he may cite sales of comparable properties located within the range of his expert knowledge."). The point is: When a witness claims that a certain sale is comparable and then claims that an adjustment needs to be made (or does not need to be made) for valuation purposes, that in itself likely requires an expert opinion. Certainly that is true of commercial property.

The Virginia Supreme Court's recent decision of *Helmick Family Farm, LLC v. Commissioner of Highways* illustrates this point. 832 S.E.2d 1 (Va. 2019). In *Helmick*, Virginia's highest court affirmed the trial court ruling excluding documentary evidence of comparable land sales that Helmick sought to use as evidence. *Id.* at 11–12. The *Helmick* court reasoned:

> Generally, a landowner should be permitted to explain the basis for his opinion of value, subject to cross-examination by the Commissioner to expose flaws or ignorance concerning the property owner's valuation of property. However, Mr. Helmick was not qualified or even offered as an expert appraiser. Given the wide latitude the trial court afforded Mr. Helmick in his testimony, and the fact that he was not testifying as an expert appraiser, we find no abuse of discretion in the trial court's handling of his testimony or its refusal to admit the proffered exhibits into evidence.

*Id.* at 12. Notably, Helmick was not a restauranteur with limited real estate experience like James. On the contrary, Helmick had "experience as a developer of residential property for over two decades, and . . . worked as a licensed contractor and licensed real estate broker." *Id.* Still, the court allowed him generally to testify that sales of nearby properties supported his valuation but not to bring in specific comparables. *See id.* at 11–12.

Here too, the district court's order did not bar James from claiming he had relied on comparable sales but did bar him from introducing evidence of specific so-called comparable sales. In our view, the district court struck the proper balance by excluding James's back-of-the-envelope comparable sales opinions. James was not an expert. He had not been "purchasing and leasing various commercial properties . . . for several decades" like the owner deemed qualified as an expert in *State ex rel. Missouri Highways & Transportation Commission v. Boer*, 495 S.W.3d 765, 770 (Mo. Ct. App. 2016).

Our rule 5.701, like Federal Rule of Evidence of 701, makes clear that unless a witness is testifying as an expert, their opinions are limited to those "[r]ationally based on the witness's perception" and "[n]ot based on scientific, technical, or other specialized knowledge within the scope of rule 5.702." Iowa R. Evid. 5.701. In discussing this language, the Advisory Committee notes state,

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

Fed. R. Evid. 701 advisory committee's note to 2000 amendments (citation omitted). As with the business owner, so too with a real property owner. The property owners' conclusions as to value are admissible into evidence not because the owners are *experts*, but because they are the *owners*. Thus, for the same reasons that we would not let a typical restaurant manager come into court and opine that certain sales of commercial property are comparable, the district court did not abuse its discretion by refusing to allow James to do so.

We recognize that many owners or prospective owners of real estate evaluate comparable sales to determine a property's value. This is true for first-time home buyers, homeowners considering downsizing, and investors in the business of flipping houses. Farmers often have accurate opinions of the value of their farmland based on the per acre price for other farms sold in the area. Owners of undeveloped land likewise make investment decisions after ascertaining the sale price of similar undeveloped land nearby.

In some cases, under Iowa Rule 5.701 or 5.702, the record may support allowing the owner to support their opinion of the value of their own property by testifying about specific comparable sales. *See generally 6.09 Acres*, 140 F. Supp. 3d at 1242 (explaining that "lay testimony 'results from a process of reasoning familiar in everyday life' whereas expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field' " (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendments)). "If an owner's testimony on value is based not upon commonly understood considerations of worth flowing from his perceptions and knowledge of his

property but instead upon technical or specialized knowledge more broadly, it crosses into expert testimony for purposes of Rule 702 . . . ." *Id.* We decide only the case before us, involving a former restaurant manager's attempt to rely on sales of developed commercial property to support his valuation of his own undeveloped land. In our view, selecting comparable sales of developed commercial real estate requires a qualified expert, which James is not.

Another court aptly emphasized the complexity involved in comparing sales of commercial property:

> The instant matter concerned *commercial* property values. There are several factors that may more-significantly affect commercial property values such as zoning designations, location, income/expense analysis, and traffic patterns and volume. Thus, the opinion as to whether two commercial properties are comparable for purposes of real estate appraisals is an inquiry that is beyond the knowledge and understanding of a typical lay person.

*City of Kent v. Atkinson*, No. 2010–P–0084, 2011 WL 6016549, at *7 (Ohio Ct. App. Dec. 5, 2011) (affirming a decision to exclude evidence of other sales where the owner "did not present an expert, did not attempt to establish himself as an expert, and did not seek a continuance in order to obtain an expert"). The same is true here.

The opinion that a sale of *developed commercial* land is "comparable" to the plaintiff's undeveloped land is an expert opinion, not a lay opinion, and it requires an expert to deliver it. District courts routinely determine whether someone is qualified to offer expert testimony, and it is pretty easy to tell from this record that James was not.

Some courts have allowed nonexpert landowners to testify about comparable sales to support their valuation of their own property. *See, e.g.*, *H.R. Terryberry Co.*, 333 N.W.2d at 126–27; *Clark v. Miss. Transp. Comm'n*, 767 So. 2d 173, 178 (Miss. 2000) (en banc) (permitting the property owner to testify to comparable sales without showing firsthand knowledge of the sales because the owner was a longtime resident and testified that he was "familiar" with sales of industrial property in the area); *Boer*, 495 S.W.3d at 769–70 (holding the landowner was qualified to testify about comparable sales despite "his lack of any appraisal training or certification" because he "had some specialized knowledge by living in, and purchasing and leasing various commercial properties in [the] County" and his specific familiarity with the two comparable sales, "including property details and the amounts for which they sold"); *City of Cincinnati v. Banks*, 757 N.E.2d 1205, 1221 (Ohio Ct. App. 2001) ("Evidence elicited on cross-examination suggesting the noncomparable nature of the property upon which Banks based her opinion might have functioned to undermine her credibility but it did not provide a basis for the exclusion of her opinion."); *Wilson*, 175 S.E.2d at 397; *see also D.C. Redevelopment Land Agency v. Thirteen Parcels of Land*, 534 F.2d 337, 341–44 (D.C. Cir. 1976) (holding district court erred by excluding landowner's opinion testimony based in part on his experience with another commercial property and stating that "such factors as the differences in size, frontage and location of the two properties go to the weight of the owner's testimony regarding suitability and not to its admissibility"). The *Boer* court elaborated as follows:

No exact formula exists for judging the competency of a witness to give an opinion on real estate values. To qualify as such an expert, it is not necessary that the witness be engaged in the real estate business. If the witness is capable of forming a better opinion on values than the jury or men in general because he is acquainted with the land in question, professes to know its value, has knowledge of and opportunity to learn the worth of similar property in the vicinity, and has participated in or has information concerning the sale of like real estate, he is usually considered competent to state an opinion.

495 S.W.3d at 769–70 (quoting *State ex rel. State Highway Comm'n v. Heim*, 483 S.W.2d 410, 413–14 (Mo. Ct. App. 1972)). James could not clear this low bar.[2]

In our view, the admissibility of lay owner opinion testimony on comparable sales should be made on a case-by-case basis. Some valuations may be too complex for a lay witness owner to present to a jury. Our review is for abuse of discretion. The district court in this case did not abuse its discretion by ruling that James, the owner of undeveloped land and former restaurant manager with limited real estate experience, was unqualified to testify about specific allegedly comparable sales of developed commercial property.

**IV. Disposition.**

For these reasons, we vacate the decision of the court of appeals and affirm the district court judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

[2]The legislature has provided an incentive for landowners to use appraisers in contested condemnation cases. *See* Iowa Code § 6B.33 (allowing owner to recover the reasonable cost of one appraisal from the acquiring agency if the commissioners awarded an amount more than 10% above the agency's final offer or if the court awards a higher amount).